RICHARD D. WHITING, as Surviving Executor, etc., of WILLIAM RICHARD DENHAM, Deceased, Respondent, *v.* HUDSON TRUST COMPANY, Appellant, Impleaded with EDITH C. ECKERSON, as Executrix, etc., of JOHN C. R. ECKERSON, Deceased, Defendant, and HOWARD C. TAYLOR, as Agent and Representative of the New York Supreme Court, to Execute the Trust Created by the Last Will and Testament of JOSEPH H. SNYDER, Appellant.

First Department, July 14, 1922.

Banks and banking — action to recover money diverted by executor and deposited in defendant bank in special account as his own funds and later used by him personally — checks deposited bore on face facts sufficient to place bank on inquiry as to whether money was depositor's individually — bank liable — action by estate to recover funds diverted by executor of estate and deposited to his account as trustee of another estate — estate to whose credit sum deposited liable for moneys thus misappropriated to its benefit.

One Eckerson received a power of attorney from plaintiff's testator authorizing him to draw, indorse, etc., bills of exchange and other instruments for said testator and in his name, and to keep one or more banking accounts and draw

against and make deposits against said accounts. The power of attorney was filed with the testator's bank. Eckerson had a personal account with the defendant trust company, an account as executor of the estate of Snyder and another account as agent. Shortly before testator's death, Eckerson drew a check to himself, made to his order as " trustee " and signed by the testator by Eckerson as " attorney in fact," and after some discussion between Eckerson and the defendant trust company as to whom the funds belonged, and on the assurance by Eckerson that they were his personal property, and without any investigation on the part of the trust company, an account was opened marked " special " and said check received as the first deposit. After testator's death, Eckerson, who was one of the executors, sold securities belonging to the estate for which he received three checks of which two were drawn to his personal order and the remaining one to his order as " special " and deposited said checks in the " special " account, and thereafter sold other securities and received in payment checks made to his order as " executor " and deposited those checks in the " special " account. Eckerson, who was short in his account as executor of the Snyder estate, drew checks on the " special " account, payable to the order of the Snyder estate and deposited them in his account with the defendant trust company as executor of the Snyder estate. He also diverted other moneys from said " special " account to his own use. Prior to the commencement of the action Eckerson died, and at that time was short in his accounts with the Snyder estate.

*Held,* that the defendant trust company is liable to the extent of the amount of the check used to open the " special " account and to the amount of the checks drawn payable to Eckerson as " executor " on the ground that it was negligent in permitting the moneys deposited by Eckerson in the " special " account to be drawn against by him, as though they belonged to him individually, for there appeared on the face of the checks specified sufficient to put the bank upon inquiry as to whether or not the funds represented by said checks belonged to Eckerson individually, and if the bank had made inquiry it would have ascertained that the money so deposited was not the money of Eckerson individually.

The Snyder estate is liable to the amount withdrawn by Eckerson from the " special " account and deposited in his account as executor of the Snyder estate, for to that extent the Snyder estate was enriched at the expense of the estate of the plaintiff's testator, the Denham estate.

Though a part of the moneys diverted to the Snyder estate were paid over to beneficiaries thereof, in pursuance of an interlocutory judgment settling and approving Eckerson's account, that constitutes no defense by the Snyder estate against the claim of the Denham estate.

PAGE and SMITH, JJ., dissent, with opinion.

APPEAL by the defendants, Hudson Trust Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of October, 1921, upon the decision of the court rendered after a trial at the New York Special Term, and also from an order entered in said clerk's office on the same day granting defendants' motion for an extra allowance.

*Holm, Whitlock & Scarff* [*Victor E. Whitlock* of counsel], for the appellant Hudson Trust Company.

*MacIntosh Kellogg* [*Abram J. Rose* of counsel; *Alfred C. Petté* with him on the brief], for the appellant Howard C. Taylor, as agent, etc.

*Gilbert D. Lamb,* for the respondent.

GREENBAUM, J.:

The plaintiff is the surviving executor of the last will and testament of one William Richard Denham, deceased. The defendant Hudson Trust Company is a domestic banking corporation. The defendant Howard C. Taylor is the agent and representative appointed by the Supreme Court to execute the trust created by the last will and testament of one Joseph H. Snyder. The remaining defendant is the executrix of the last will and testament of John C. R. Eckerson, deceased. There are thus three different estates involved in this controversy.

The action is brought to recover moneys alleged to belong to the estate of William R. Denham, which were deposited in varying amounts and at various times with the Hudson Trust Company in 1915 and 1916 by one John C. R. Eckerson, now deceased, in an account designated " John C. R. Eckerson, Special," the major portion of which had been withdrawn by him by checks signed " John C. R. Eckerson, Special." The judgments entered were the following: (1) A judgment dismissing the counterclaim set up by the defendant Hudson Trust Company. (2) A judgment against the Hudson Trust Company for the sum of $12,064.44, the balance on deposit with it in the account designated " John C. R. Eckerson, Special." (3) A judgment against the Hudson Trust Company for a further sum of $50,133.60 made up by the amount of $37,980 and interest thereon found to have been illegally paid out by the trust company on the order of John C. R. Eckerson by checks signed by him as " John C. R. Eckerson, Special." (4) A judgment against the defendant Taylor as representative of the estate of Joseph H. Snyder for the sum of $38,537.40, being the amount of $29,195 with interest added which had been transferred to the account of the estate of Joseph H. Snyder from the special account known as " John C. R. Eckerson, Special." (5) A judgment against Edith C. Eckerson, as executrix of the last will and testament of John C. R. Eckerson, for $50,133.60, the amount with interest adjudged to belong to the Denham estate by reason of the deposits under the " special " account. The only judgments that need be considered are Nos. 3 and 4.

The proofs establish that up to the time of the discovery of his defalcations, John C. R. Eckerson was regarded as a man of good standing in the community and was believed to be a man of financial

responsibility. In the year 1915 one William R. Denham, a close personal friend of Eckerson, had a considerable bank account with the United States Mortgage and Trust Company. Being very ill and having every confidence in Eckerson, he executed a power of attorney to him which was filed with the trust company in which he stated *inter alia* that I " make, constitute and appoint John C. R. Eckerson my true and lawful attorney, *for me and in my name* to draw, accept, make, execute, endorse, transfer, sell and deliver bills of exchange " and other instruments and "*to keep one or more banking accounts and draw against and make deposits against such account or accounts,*" etc. (Italics ours.)

This power of attorney was executed and filed with the United States Mortgage and Trust Company on April 9, 1915. Denham died on September 21, 1915. Eckerson and one Richard D. Whiting qualified as executors of his estate on or about February 5, 1916. On February 9, 1916, both executors accompanied by representatives of the New York State Comptroller examined and listed all the securities of the estate kept in a vault of the United States Safe Deposit Company and then replaced them in the vault. During the spring of 1916 both executors again together visited the safe deposit company's vault for the purpose of clipping coupons from bonds. Thereafter, however, the co-executor, now the sole executor of the Denham estate, left the management of the estate largely in the hands of Eckerson excepting that on March 13, 1916, the two executors opened a joint deposit account for the Denham estate with the defendant Hudson Trust Company. The total amount deposited in that account was $18,853.84, all of which was practically intact at the time of Eckerson's death. The incidents which lead up to the controversy in suit will now be detailed.

On September 13, 1915, a few days before Denham's death, Eckerson opened an account in the Hudson Trust Company in the name of " John C. R. Eckerson, Special." That account was opened by the deposit of a check drawn upon Denham's deposit account with the United States Mortgage and Trust Company, dated September 11, 1915, for $7,000, signed in the name of " Wm. R. Denham by John C. R. Eckerson, atty. in fact," payable to the order of " John C. R. Eckerson, Trustee," and indorsed by him as trustee. During April and May, 1916, other deposits were similarly made by Eckerson in this account from the funds of the Denham estate. Plaintiff contends that all of these deposits were made under circumstances which put the trust company on notice to make inquiry concerning the right of Eckerson to claim as his own, funds which belonged to William R. Denham, and after his death to his estate.

It may here be noted that Eckerson was the sole surviving executor of the estate of one Joseph Snyder, deceased, and as such executor had kept an account with the Hudson Trust Company since about 1908. Eckerson also had a personal account with that company since 1908, and still another account as agent. The circumstances under which the account " John C. R. Eckerson, Special," was opened were as follows: Eckerson called up Purdy, the then secretary of the Hudson Trust Company on the telephone and told him that he wished to open another personal account, but wanted to differentiate it from his existing personal account and that for bookkeeping purposes he would like to designate it in some other form and asked Purdy to give him some suggestion in the matter. Purdy suggested that the account be designated as No. 2 or " Special " and it was decided that it should be called " special " account. Eckerson called at the bank shortly thereafter for the purpose of opening that account. The testimony of Mr. Purdy, secretary, on the trial was to the effect that when Eckerson called at the bank with a $7,000 check made to his order as " trustee " he told him that was " not in accordance with our conversation. * * * I said: ' This is not, it can't go into a special account; what are these funds? ' He said, ' they are mine, they belong to me. I merely want to open a personal account.' I said: ' are these trustee funds? ' He said: ' no they are not, it was money belonging to him.' And I think the fact that he had made the check or could have made it payable to himself as special. I said: ' you should have done that. That would have been the proper way to open the account.' He said: it was now done, and I think he called my attention to the certification and he said he thought the words were interchangeable. I said: ' Oh, no, that would make considerable difference to us.' He said that was merely a personal matter with him and would I accept the check. I think I got up and consulted one of the other officers in regard to it, I made the explanation that Eckerson made to me, which I had no doubt was right, I had no reason to doubt it, and the officer concurring with me that we should accept the check and mark it special and open an account that way, and I did it."

It thus appears that not only was the check made to the order of Eckerson as " trustee " a circumstance which in itself ordinarily would have attracted the special attention of any prudent bank official that it involved a fiduciary relationship, but it appears that as matter of fact the secretary of defendant trust company realized a " trustee " check could not go into the special account. Besides, the check was signed in the name of Denham by Eckerson as " attorney in fact," thus indicating on its face that the money

was Denham's and not Eckerson's. The officials of the trust company did nothing in the way of inquiring whether Eckerson's claim was truthful that the money was his but relied solely upon his statement that the check belonged to him individually. Inquiry might have been made of Mr. Denham himself in whose behalf Eckerson was acting as attorney in fact and the truth would have been revealed that the " special " account was being opened not by moneys which belonged to Eckerson individually but to Denham. They did not even interrogate him as to his relations with Denham and why it was that he signed Denham's checks as " attorney in fact." Had inquiry been made at the United States Mortgage and Trust Company, the power of attorney deposited with it could have been scrutinized and it could have been ascertained that the account against which Eckerson was drawing in the name of Denham as attorney in fact was for the benefit of Denham and belonged to Denham and not to Eckerson. Incidentally it might have been learned that Denham was a very sick man who had intrusted Eckerson with the management of his affairs during his illness. In any event, such an inquiry doubtless would have revealed that Eckerson had deceived Purdy when he claimed that the money was his own personally. Moreover, the circumstance that the check drawn to his order as " trustee " was signed by Eckerson as " attorney in fact " was wholly inconsistent with the idea of Eckerson's personal ownership of the check.

In April, 1916, Eckerson took certain Denham securities from the safe deposit box of the Denham estate and sold them through a brokerage firm known as McCurdy, Henderson & Co., upon which there was realized $18,817.26. He received three separate checks from that firm as the proceeds of the sale, of which two were drawn to his own personal order and the remaining one to his order as " special." All these checks were indorsed and deposited in the special account. In May, 1916, Eckerson took a number of other securities from the Denham safe deposit box and sold them, receiving the proceeds in four separate checks totalling $22,468.56, each check being made to his order as " executor." All of these checks were deposited with the defendant trust company in the " special account " with his indorsement as " executor." There was a further deposit to the same account of $422.25, proceeds of Denham coupons and some small items of interest, thus making a total of all the deposits in the " special " account unquestionably belonging to the Denham estate of $48,959.49.

Eckerson drew against the " special " account a total of $37,980, of which the sum of $29,195 was diverted by him to the estate of Joseph H. Snyder. These diversions were accomplished by the

drawing of three different checks to the order of the estate of Joseph H. Snyder which were deposited in the Hudson Trust Company, to the credit of that estate. The Snyder estate was thus enriched to the amount of $29,195 without any consideration therefor having passed to the Denham estate.

It also appears that there fell due on October 28, 1916, two weeks after Eckerson's death, a promissory note for $1,900 to the Hudson Trust Company, dated June 28, 1916. The trust company applied on account of the note a balance of $500.48 standing to the credit of Eckerson's personal account and the sum of about $1,400 remaining unpaid on the note was charged to the " special " account under the trust company's claim of a banker's lien. There is thus evidence that to the extent of $1,400 the Hudson Trust Company itself benefited by the " special " account.

It is contended by the respondent that when Eckerson deposited the four checks aggregating $22,468.54 in the " special " account drawn to himself as " executor," the defendant trust company was charged with further notice that the deposits in the " special " account were not Eckerson's individual moneys and particularly so where all the foregoing circumstances are taken into consideration.

We are thus called upon to consider, first, whether the Hudson Trust Company is liable for its alleged negligence in permitting moneys deposited by Eckerson in the " special " account to be drawn against by him as though they belonged to him individually, and further whether the estate of Joseph H. Snyder is obligated to return to the Denham estate the $29,195 which it is claimed were illegally diverted to it.

The responsibilities and obligations of an ordinary bank of deposit under certain circumstances are discussed in *Bischoff* v. *Yorkville Bank* (218 N. Y. 111 *et seq.*). The court there stated that a trustee " may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. * * * Trust funds do not lose their character as such by being deposited in a bank for the individual credit and account of the person who is trustee. It may be stated as a general principle that if money deposited in a bank was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his individual bank account. * * * A bank does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, in the knowledge of the bank, credits created

by deposits of trust funds. The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. The presumption is, and after the deposits are made remains until annulled by adequate notice or knowledge, that the depositor would preserve or lawfully apply the trust funds. The contract, arising by implication of law, *from a general deposit* of moneys in a bank is, that the bank will, whenever required, pay the moneys in such sums and to such persons as the depositor shall direct and designate. Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly."

When the court said that even if the bank had knowledge of the fact that a customer had deposited in his personal account trust funds, the bank had the right to presume that the depositor will honestly apply the trust funds to trust purposes, it did not thereby hold that a depositary may escape liability, where circumstances existed which would lead an ordinarily prudent person to make inquiry whether moneys deposited as " trustee " and " executor " belonged to the depositor individually.

The counsel for the Hudson Trust Company relies upon *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.* (198 N. Y. 422). In that case the plaintiff's treasurer, one Van Voorhis, had the right to draw checks against the deposit account of the plaintiff with the Central Trust Company. In the abuse of this power he drew certain checks to his own order against the plaintiff's account with the Central Trust Company, which he deposited with the defendant Knickerbocker Trust Company in his individual account. It was sought to hold the Knickerbocker Trust Company liable on the ground that it was put upon inquiry when it received the checks made out to Van Voorhis individually. The court held that it virtually was a two-fold inquiry when it presented the checks to the Central Trust Company for payment. *First,* the inquiry was whether the checks bore the proper signatures, and *second,* whether Van Voorhis had the right to draw checks payable to his own individual account. The fact that the Central Trust Company honored the checks necessarily answered both questions. It was further held that any further inquiry of that bank would not throw any more light upon the matter than it had, and the Knickerbocker Trust Company was held not to be liable. The difference between the

facts of that case and those here appearing have been heretofore pointed out. In the present case we are dealing with a " special " account which was opened with the check for $7,000 drawn to Eckerson under a power of attorney of Denham and made payable to himself as "trustee " upon the representation that the money was his own and when inquiry if made of the United States Mortgage and Trust Company would have revealed that Eckerson had misrepresented the facts and that they belonged to Denham.

It seems to us that the defendant Hudson Trust Company is liable to the plaintiff to the extent at least of $7,000 with which the " special " account was opened. As to the further liability of the defendant trust company arising from subsequent deposits to this account, the facts will be briefly reviewed. The deposits in April, 1916, to the " special " account aggregating $18,817.26 realized from the sale of securities belonging to the Denham estate were made in three checks, two of them to Eckerson's personal order and the remaining one to his order as " special." As to these checks there was nothing on the face of them which would indicate that they were other than personal checks. The further deposits to the " special " account made in May, 1916, aggregating $22,468.56, the proceeds of the sale of other securities belonging to the Denham estate, were embodied in four separate checks each one of which was made to the order of Eckerson as " executor." With respect to these " executor " checks, the defendant trust company had notice upon the face of the checks that they did not belong to Eckerson individually and they were charged with the duty of inquiring as to Eckerson's relationship to these checks.

The rule outlined in *Bischoff* v. *Yorkville Bank* (*supra*) related to a general account of a depositor and not to a " special " account such as that before us. We are of the opinion that the Hudson Trust Company is liable to the extent of $7,000, the initial deposit in the " special " account, and the further sum of $22,468.56, deposited in May, 1916, with interest on such sums, and the judgment of $50,133.60 must be reduced accordingly.

With regard to the judgment rendered against the Snyder estate, the legal question involved is whether that estate having received $29,195 without consideration so far as the Denham estate was concerned was chargeable with notice of Eckerson's conversion of these funds. The diversion was accomplished through three checks dated May 4, 5, and 8, 1916, respectively, each of which was drawn upon the Hudson Trust Company to the order of the estate of Joseph H. Snyder and signed " John C. R. Eckerson, Special." The indorsement on the first of these checks, which was for $20,000, reads as follows: " For deposit in the Hudson Trust Company for

credit of account of estate of Joseph H. Snyder, M. J. D." The second was for $7,500 and was indorsed " pay to the order of estate of Jos. H. Snyder." The third was for $1,695 and was marked " paid."

The appellant Taylor relies upon a judgment entered against Eckerson in his lifetime, by reason of which it is argued that the diverted moneys traced to the Snyder estate cannot be charged up against it. The facts as to that judgment are as follows: While Eckerson was acting as sole surviving trustee of the Snyder estate, an action was brought by the executor of an assignee of one of the beneficiaries under the Snyder will for an accounting by Eckerson of his proceedings as sole surviving trustee. To this action Eckerson and the various beneficiaries under the Snyder will were made parties defendant. Pursuant to the direction and order of the Supreme Court, on March 3, 1916, Eckerson filed in the office of the clerk of the court an account of his proceedings from January 1, 1908, to February 1, 1916. This account contained a summary statement charging him as trustee with a cash balance of principal amounting to $198,089.35, in addition to certain real property and mortgages set forth in said accounting, and with respect to income with a cash balance of $52,999.81.

On April 14, 1916, a decision was rendered in said action adjudging that Eckerson had in his hands " as said trustee the sum of $198,089.35 in cash belonging to the principal of the estate, together with the mortgages set forth in Schedule B of his account and the real property set forth in Schedule A thereof," and had in his hands " as said trustee the sum of $52,999.81 in cash belonging to the income of said estate."

On April 20, 1916, an interlocutory judgment and decree was entered on the decision so made adjudging that the account of Eckerson be " settled, allowed, passed and approved " and directing that out of the moneys so found as remaining in his hands " belonging to the principal and income of said estate, the said trustee is directed to distribute the sum of $188,089.35, belonging to principal and the entire balance of $52,999.81 belonging to income." In compliance with the provisions of said interlocutory judgment and as a result thereof, Eckerson made payments aggregating $228,084.94 to the beneficiaries and to the persons designated in said interlocutory judgment, of the amounts severally adjudged to be due to them by checks drawn on the account of the " Estate of Joseph H. Snyder, John C. R. Eckerson, Executor," in the defendant trust company.

It appeared that prior to the entry of the interlocutory judgment on April 20, 1916, due to embezzlements and defalcations by

Eckerson, there was a deficiency in the cash assets of the Snyder estate in his hands amounting to the sum of $166,166.38, and between May 1, 1916, and October 14, 1916, in order to make the payments required of him by said judgment and because he was short in his accounts to said estate, Eckerson collected mortgages held by the estate amounting to $120,250 which by the terms of said judgment he was directed to hold for the purpose of the trust, and deposited the proceeds thereof in the account of the " Estate of Joseph H. Snyder, John C. R. Eckerson, Executor," with the defendant trust company. On October 14, 1916, Eckerson died wholly insolvent. At the time of his death Eckerson was short in his accounts to the Snyder estate in the sum of $142,430.59. On the appointment of the defendant Howard C. Taylor, as agent, after Eckerson's death, the only property belonging to the Snyder estate turned over to him consisted of cash amounting to $6,687.93 and mortgages amounting to $66,536.97, together with several small pieces of real estate, which property was far less in value than the amount due from Eckerson to said estate and far less than the amount with which he as trustee was chargeable under and by the terms of said interlocutory judgment.

After Eckerson's death the defendant Taylor, as agent, collected the sum of $80,000 on account of Eckerson's defalcations, still leaving a shortage of $62,430.59.

It seems clear that in making the payments pursuant to and as directed by the interlocutory judgment to the beneficiaries and persons designated therein, Eckerson diverted and wrongfully used trust moneys belonging to the estate of William R. Denham, of which he and the plaintiff were co-executors, by transferring $29,195 from the account of " John C. R. Eckerson, Special," on deposit with the defendant trust company into the account " Estate of Joseph H. Snyder, John C. R. Eckerson, Executor," without any consideration passing to the Denham estate or to Eckerson in behalf of the said Denham estate, and that as the transfer thereof was a wrongful use and misappropriation of such moneys, the plaintiff is entitled to a refund thereof from the Snyder estate, with interest, against the defendant Howard C. Taylor, as agent.

Counsel for the Snyder estate contends that with respect to the moneys paid over to the beneficiaries under the Snyder will on account of an adjudged indebtedness due from Eckerson to them as evidenced by the interlocutory judgment settling and approving his account, without notice or knowledge by the Snyder estate or the persons to whom said moneys were paid that they were trust funds belonging to the Denham estate, these beneficiaries were in

the position of *bona fide* purchasers for a valuable consideration within the rule that trust funds diverted from their proper purpose cannot be followed into the hand of a *bona fide* holder for value. But we are not here dealing with the case of a principal and agent in which the latter was engaged in a scheme to defraud the principal, who was an entirely different entity from the agent. Eckerson was at the same time the sole trustee of the Snyder estate and an executor of the Denham estate. The delivery of the diverted Denham funds to the Snyder estate did not result in a loss to the Snyder estate. On the contrary, it was one which tended to enrich its bank account at the expense of the Denham estate. There seems to be no reason in common honesty for permitting the Snyder estate to retain the benefit of the stolen funds. (*Tugman* v. *National Steamship Co.*, 76 N. Y. 207.)

The rule applicable to the situation before us is well expressed in *Atlantic Cotton Mills* v. *Indian Orchard Mills* (147 Mass. 268), which was a case where the common treasurer of two corporations stole moneys from one of the corporations and transferred them to the other corporation. Said the court (at p. 275): " The rule is general, that, if one who assumes to do an act which will be for the benefit of another, commits a fraud in so doing, and the person to whose benefit the fraud will inure seeks, after knowledge of the fraud, to avail himself of that act, and to retain the benefit of it, he must be held to adopt the whole act, fraud and all, and to be chargeable with the knowledge of it, so far at least as relates to his right to retain the benefit so secured." To the same effect see *Newell* v. *Hadley* (206 Mass. 335); *Holden* v. *New York & Erie Bank* (72 N. Y. 286); *United States* v. *State Bank* (96 U. S. 30, 36).

We are of the opinion that the Snyder estate is chargeable to the extent that it was enriched at the expense of the Denham estate and that the judgment against it for $38,537.40 should be affirmed, with costs.

The judgment against the Hudson Trust Company should be reduced as above indicated, and as thus modified affirmed as to it, without costs. The remaining judgments should be affirmed, with costs to the respondent.

CLARKE, P. J., and MERRELL, J., concur; PAGE and SMITH, JJ., dissent.

PAGE, J. (dissenting in part):

I dissent from the conclusion of the prevailing opinion that the judgment so far as appealed from by the Hudson Trust Company should be affirmed. The facts which are stated, with relation to the opening of the account, to have been of such suspicious appear-

ance as to charge the trust company with notice that Eckerson was diverting the money of Denham to his own use are: (1) That the check was signed in the name of William R. Denham by John C. R. Eckerson, attorney in fact; (2) that it was made payable to John C. R. Eckerson, trustee; (3) that it was deposited to Eckerson's credit in a special account.

1. Eckerson stated to the bank officials that the money was his money. This was in reply to their inquiry as to the check being made payable to "Eckerson, trustee," and had no relation to the manner in which the check was signed. In the prevailing opinion it is stated, "Besides, the check was signed in the name of Denham by Eckerson as 'attorney in fact,' thus indicating on its face that the money was Denham's and not Eckerson's. * * * Had inquiry been made at the United States Mortgage and Trust Company, the power of attorney deposited with it could have been scrutinized and it could have been ascertained that the account against which Eckerson was drawing in the name of Denham as attorney in fact was for the benefit of Denham and belonged to Denham and not to Eckerson." There was no inquiry necessary to show that the account in the mortgage and trust company was Denham's and not Eckerson's, and that the account was for the benefit of Denham and not Eckerson. The face of the check showed that, and Eckerson never made any claim that the account in Denham's name was his, Eckerson's. But what he did claim was that the avails of that check belonged to him personally. If investigation had been made at the mortgage and trust company, it would have revealed a broad and comprehensive power of attorney giving Eckerson the right "to draw, accept, make, execute, endorse, transfer, sell and deliver bills of exchange, promissory notes, drafts, checks and all other instruments for the payment of money; to keep one or more banking accounts, and to draw against and make deposit on such account or accounts; to borrow money * * * to pay * * * any claims or demands against me; to make any contracts, agreements or stipulations and to do any other acts or things incident to or suitable or deemed by him advisable in connection with any of the purposes hereinbefore referred to; giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever deemed by him requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute may lawfully do or cause to be done by virtue hereof." An inspection of this power of attorney certainly would not show any lack of

authority in Eckerson to draw this check upon the account. Denham could himself have drawn it, and the act of Eckerson was within the express power given by the power of attorney, and I know of no obligation resting upon one who accepts an instrument, executed within the express power conferred, to go further and inquire whether the attorney has abused the power given, for his own benefit or to commit a fraud on his principal. It is said that if inquiry had been made of Denham, " the truth would have been revealed that the ' special ' account was being opened not by moneys which belonged to Eckerson individually but to Denham." Here again I know of no obligation resting on one who accepts an instrument executed by an attorney in fact within the expressed or apparent power conferred, to inquire of the principal whether the power had been abused or was being fraudulently used. The defendant trust company did not accept this check in payment of Eckerson's personal debt or obligation owing to the defendant. It merely collected the amount thereof and placed the same to the credit of the payee. The certification and payment of the check by the institution on which it was drawn constituted the most positive assertion by that institution that Eckerson was authorized to draw just such a check upon it. (*Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, 430.)

2. Nor was there anything suspicious, or to charge the defendant trust company with notice that the check was not his personal property, by the addition of the word " trustee," even if the account had been opened as the account of John C. R. Eckerson, Trustee, as Eckerson at first proposed, or to give even constructive notice that the account was really in trust and not individually. In *Manhattan Savings Institution* v. *New York National Exchange Bank* (170 N. Y. 58, 67) the court said: " Coupling the word ' trustee ' with his name as a depositor was not an unusual, or peculiar, circumstance; nor, necessarily, imported that he was acting as trustee for others. It simply distinguished, or described, the account which he opened in a particular way, satisfactory to himself, and did not call for any investigation on the part of the bank into his authority as trustee." That the mere addition of the word " trustee " to the name of the payee was mere *descriptio personæ*, and not intended to intimate that it applied to him only in the technical character which might appear from the word used.

3. There is no significance whatever to be attached to this money being deposited in a " special account." Eckerson had a personal account with the defendant trust company, and all that this method of opening a special account would tend to show was, that for some purpose of his own he desired to differentiate this account from his

general account, and for some purpose of his own to segregate and keep the deposits in this account separate and not commingle them in his general account. Far from there being anything suspicious it would tend to allay suspicion that his purpose was to convert to his own use moneys which he held for a special purpose or upon a trust. And yet in this circumstance alone, Mr. Justice GREENBAUM discovers sufficient to differentiate the case under consideration from *Bischoff* v. *Yorkville Bank* (218 N. Y. 106).

Unless the facts of the opening of the account were sufficient to charge the defendant with notice that the depositor was maintaining this account with a fraudulent purpose, certainly the deposit of the three checks payable to Eckerson's own order and the one payable to his order as " special," totaling $18,817.36, in this special account would not impose any obligation on the defendant trust company to investigate as to the origin of these checks, or in return for what they were received.

There were deposited in this account four separate checks made payable to " John C. R. Eckerson, Executor," not as would be inferred but not intended to mean " as executor " as might be inferred from the language used in the prevailing opinion. In addition to the presumption that the defendant trust company would be entitled to presume that " the fiduciary will apply the funds to their proper purposes under the trust " (*Bischoff* v. *Yorkville Bank, supra,* 111), we have the actual dealings with the special account. The moneys deposited in this account were largely transferred to another account that Eckerson had with the defendant trust company as executor of the estate of Joseph H. Snyder. The first " executor " check that he received was for $7,252.13, which he deposited in the special account, and on the same day checked out to the Snyder estate a check for $7,500. On the same day that the check for $1,694.25 was deposited a check against the special account in favor of the Snyder estate was deposited in that account for $1,695. On May eleventh and sixteenth the third executor's check for $11,231.26, and the fourth for $2,290.92, were deposited, but on May fourth a check for $20,000 had transferred that sum to the credit of the Snyder estate. There was nothing whatsoever to indicate to the defendant that these funds belonged to the Denham estate, or any particular estate, and when they were transferred to the Snyder estate, of which he was sole executor, the defendant certainly could presume, if the funds did belong to any estate and not to Eckerson personally, that they belonged to and had been paid over to the proper estate.

Eckerson drew no check on this account to pay a personal obligation of himself to the defendant, nor did the defendant gain any

benefit or advantage to itself from this special account, except that after Eckerson's death with respect to a promissory note for $1,900 payable to the defendant trust company, that company applied to its payment $500.48, the balance of Eckerson's personal account, and $1,400, the balance, was charged to the special account; because of which the majority of the court say: " There is thus evidence that to the extent of $1,400 the Hudson Trust Company itself benefited by the ' special ' account." But it is receiving money with notice, express or implied, that it was held in trust for another, and applying that upon the obligation of the fiduciary, that renders the taker liable to account.

The facts in this case are stronger in support of the exoneration of the Hudson Trust Company than they were favorable to the Yorkville Bank in the *Bischoff* case. In my opinion the judgment and findings of fact upon which liability was imposed on the Hudson Trust Company to the extent that it has appealed should be reversed, and the recovery against it limited to the balance remaining in the special account. Otherwise I concur in the opinion of Mr. Justice GREENBAUM.

SMITH, J., concurs.

Judgment as to Hudson Trust Company modified as indicated in opinion and as so modified affirmed as to it, without costs; in other respects affirmed, with costs to respondent. Settle order on notice.