W. A. BROCKHURST CO., INC., Plaintiff, *v.* CITY OF YONKERS, N. Y. and Others, Defendants.

Supreme Court, Westchester County, November, 1933.

*Francis J. Duffy,* for the plaintiff.

*Fogarty, Quel, Devlin & Beckwith,* for the First National Bank and Trust Company of Yonkers.

*Leonard G. McAneny,* for the City of Yonkers and another.

MORSCHAUSER, J. In this action the plaintiff and various defendants seek to foreclose thirty-seven liens against the city of Yonkers and the board of education of the city of Yonkers arising out of the general contract made with Kenneth MacKay & Co., Inc., general contractor, for the construction of the Longfellow Junior High School.

The contract price was $654,113.65. By omissions this was reduced to $652,879.32. Against this sum, the defendant city is credited with undisputed payments amounting to $550,828.89, leaving a balance of $102,050.43. From this balance should be deducted the fair and reasonable cost of completion which is found to be the sum of $2,105.67, reducing said balance to $99,944.76, which represents the fund applicable to the payment of valid liens provided: (a) Plaintiff's contentions are sustained that $75,000 was improperly paid to the general contractor for which it is not entitled to credit, and that (b) no deduction be allowed on counterclaim under the liquidated damage clause of the contract.

Consideration will first be given to the disputed payments of $75,000 on account of retained percentages. Plaintiff claims these payments were not made in good faith; that they were advance payments made to avoid the provisions of article 2 of the Lien Law (§ 3 *et seq.*) to enable the contractor to pay debts other than those incurred for the erection of said school; that contractor falsely and fraudulently represented that it had no unpaid labor or material bills; that the board and city knew such representations to be false, but nevertheless in contravention of the contract and the rights of creditors paid said contractor $25,000 on August 21, 1930, and $50,000 on September 19, 1930, out of the retained percentage fund without requiring releases of lien or receipts of payments from materialmen and subcontractors in either instance.

The claim of bad faith on the part of the board and city arises out of the following situation: On March 22, 1930, the contractor assigned to the First National Bank and Trust Company of Yonkers all its right, title and interest in and to all retained percentages that should accrue to the contractor under the provisions of said contract in consideration of which the assignee agreed from time to time to loan the contractor upon its promissory note or notes or renewals or substitutions a sum not exceeding $50,000 inclusive of moneys already advanced. It is provided that said agreement should be subject to the approval of the board of education and the corporation counsel of Yonkers " as to its form." The assignment was received by the board March 28, 1930, with directions from contractor that the board deliver warrants or drafts only to the bank, although payable to the contracting corporation, until further notice. This assignment was not filed as required by section 16 of the Lien Law and was invalid.

Plaintiff claims that at the date of the execution of this assignment the balance due contractor for work done and extras exceeded $216,329.40 and that the failure to file said assignment as a public record as provided by the Lien Law lulled the creditors into a sense of fancied security prompting the unsuspecting subcontractors to continue construction to substantial completion at the time such payments were made. This is denied by defendants who claim that the provisions of the contract were explicitly followed in that before making such payments they had (a) proper certificate from the architect, (b) satisfactory evidence that no liens were filed or would be filed, and (c) approval of corporation counsel. They also assert that such payments were not hurriedly or secretly made but, on the contrary, pursuant to appropriate resolutions adopted at public meetings of the board of education and further deny that any fraud or collusion can be imputed from the circumstances attending the payments. A determination of the good faith of the board and city requires a construction of the provisions of the contract specifically with respect to their duties under and in relation to same.

The contract of February 15, 1929, by paragraphs 1 and 10, specifically provides that the plans and specifications, etc., should be a part thereof. General Conditions B, subdivision (e) of specifications relating to payment to subcontractors, provides that, when payment is made to contractor for work done or material furnished by subcontractors, the contractor shall pay subcontractors amounts due before he shall be entitled to receive a succeeding payment. It further provides: " A sufficient reason for refusal on the part of the architect to issue the certificate shall be evidence of any lien or claims properly chargeable to the contractor for which if established

the owner of the premises might become liable. The evidence above referred to shall be construed to mean the receipt by the architect of a statement from any party or parties furnishing work or material * * * to the effect that the contractor has failed to properly indemnify or compensate them therefor, * * * whether or not any lien or liens therefor have been filed by the said party or parties." (General Conditions B, subd. e, p. 15.)

Paragraph 12 of the contract, relating to semi-monthly payments, and paragraph 4, relating to retained percentages, must be read in connection with paragraph 18, relating to liens, as well as with the general conditions of specifications, relating to payments to subcontractors, and to liens. (General Conditions B, subd. i.) Specification provision relating to liens differs in context from the contract provision, paragraph 18, in that it refers to the " refusal " rather than the " failure " of the subcontractor to furnish release or receipt in full. Refusal contemplates action rather than inaction; a refusal after demand. Subcontractors had right to expect demand before certificate was issued.

Paragraph 13 provides for submission by contractor to architect of written application for each payment accompanied, if required, by receipts or vouchers from subcontractors showing payment to them, and gave architect supervisory power with respect to apportionment of payments by contractor to subcontractors.

These provisions contemplated a scheme for the protection of subcontractors by placing the supervision and control of all payments to general contractor under the power and direction of the architect and to circumvent his disposition thereof to the detriment of subcontractors furnishing material and labor on the job.

By recent enactment such moneys paid to a contractor are declared to constitute trust funds in his hands. (Lien Law, § 25-a, added by Laws of 1932, chap. 627, § 8.)

When application was made for the withdrawals from the retained percentage fund in each instance, the architect knew there were outstanding unpaid claims of subcontractors for material and labor furnished to said job. It is immaterial that such claims were not reduced to filed liens. The architect properly interpreted his duty to refuse certificate in the face of claims outstanding and unpaid to subcontractors and not only brought the situation to the attention of the board, but sought advice of the corporation counsel. who interpreted the architect's duty only according to the provisions of the resolution of the board of education. That resolution provided for payment of $50,000 to the general contractor among other things, " provided a certificate is obtained from the architect."

On September 17, 1930, the architect called to the attention of

the committee on architecture and construction the false statements of the contractor respecting payments due to persons employed in and about the work; advising that some subcontractors had not been paid and that he, the architect, could not " honestly attest to the fact that there are no liens and that there will be none filed," and that he had informed the contractor he could not issue such certificate unless he had a release of each subcontractor. (Plaintiff's Exhibit 30.)

On September 18, 1930, the architect wrote the corporation counsel that he could not issue a certificate to the effect that no liens will be filed " unless I may legally accept claimant MacKay's affidavit of the 15th of September approved by your office, a copy of which is before me in which they state ' none have been filed and no liens will be filed.' " The corporation counsel's reply directed the attention of the architect to the fact that the resolution did not indicate the necessity of any certificate with relation to liens filed or to be filed, and further that it did not provide " that the contractor furnish to you or to myself satisfactory proof that no liens have been filed or will be filed against the work."

After adoption of the resolution of September 11, 1930, the warrant in payment of $50,000, although drawn to the order of the contractor, was delivered to the bank. Three of the participating actors in the consummation of the transaction were stockholders of the bank. The record indicates a careful and studied attempt to make said payment of $50,000 to the bank through the general contractor to enable the latter to discharge its obligations to the bank. The subcontractors who had furnished labor and material with knowledge of the provisions of the contract were interested in this fund; that they had not filed liens is immaterial. The board having knowledge of such claims was in duty bound to require compliance by contractor and architect with the plain provisions of the contract. Had the architect given notice of contractor's application to withdraw the subcontractors could have defeated payment by the filing of liens which manifestly would have been promptly done had knowledge of the assignment or intended withdrawal been brought to their attention.

With respect to the $25,000 payment of August 21, 1930, the defendants claim proper appropriation by proof of payments in the sum of $25,712.06 to subcontractors and for payroll requirements. Plaintiff contends that the contractor received a total of $48,940.25 in August; that it was not satisfactorily shown that above payments were all for account of the Longfellow School; that it was more than sufficient to make such payments from the moneys received by the contractor in excess of said $25,000 by eliminating an item of $7,000 paid bank, but not properly chargeable to the job.

Under the provisions of the contract the retained percentage fund was in the nature of a trust for the benefit of unpaid subcontractors and materialmen and the board and city owed a duty to the subcontractors to safeguard the withdrawal or payment thereof under circumstances operating as a fraud against such subcontractors. After consenting to an improper withdrawal, it is no answer to cite subcontractors' neglect to file liens.

The $75,000 paid from retained percentage fund will, therefore, be disallowed as against the claims of the lienors.

The defendants' counterclaim under liquidated damage clause of contract is disallowed. Time for completion was extended to November 15, 1930. Occupancy began September 5, 1930. The circumstances justify a waiver of right to insist upon liquidated damage provision of contract and in the absence of proof of actual damage the counterclaim should be disallowed. (*Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, 199 N. Y. 479.)

The plaintiff's lien was properly filed with the secretary of the board of education and with the comptroller of the city of Yonkers. (Lien Law, § 12; *Matter of Kelly* v. *Ferguson*, 205 App. Div. 591.)

Sections 12 and 18 of the Lien Law provide for the filing of liens before construction of public improvement is completed and accepted and within thirty days thereafter and shall not continue for a longer period than three months from the time of filing unless action commenced to foreclose lien or order made by court of record continuing such lien.

The contract provides for payment thirty days after completion of work to the satisfaction of the committee on architecture and construction upon architect's certificate and it further provides that in default of prompt performance the board may employ other persons by contract or otherwise and charge the expense of completion against the sum payable to contractor to whom the balance is payable. On February 13, 1931, notice was given contractor to complete and upon failure to do so new contract was made with Barney & Co. June 29, 1931, for completion of work. This action was commenced February 9, 1931. The plaintiff claims that the moving in and taking control on September 5, 1930, amounted to completion and acceptance and started the thirty-day period running within which liens should have been filed. Plaintiff also claims that the testimony of the contractor and architect coupled with the board's allowance of withdrawal from the retained percentage fund shows a waiver of certificate of completion and/or a substantial completion of the building as of September 15, 1930. There is authority that the time to file lien commences from substantial completion of the contract (*Delany* v. *Carpenter*, 62 Misc. 416;

affd., 136 App. Div. 897) but in *Bader* v. *City of New York* (51 Misc. 358) it was held that where the work was completed by owner the time within which a lien must be filed runs from the date of completion. The court is required to give a liberal construction in the interest of lienors and, therefore, it will be held that all liens duly filed before, or within the thirty days from completion and kept alive by court order or by the commencement of this action to foreclose, will be entitled to share in the fund subject to such liens.

On the settlement of decision the court will find specifically with respect to each lien entitled to share in the fund and to those which are excluded by reason of failure to properly file, extend, plead or for insufficiency in the structure of the lien in any respect.

The court grants motions to strike out; also reserved motions to strike out. Exhibit 212 is excluded. Answers of architect involving legal construction stricken out. Exceptions in each instance to the defendants.

On settlement of decision the court will pass upon the extra allowance by way of compensation to plaintiff's attorney to adequately compensate him for the extraordinary labor involved in the preparation and trial of the action.

Settle findings in accordance with the foregoing after five days' notice thereof.