Rosanna C. Barclay, etc., Plaintiff, *v.* Corn Exchange Bank Trust Company and Others, Defendants.*

Supreme Court, Bronx County, June 5, 1934.

*Benjamin P. DeWitt*, for the plaintiff.

*Simpson, Thacher & Bartlett*, for the defendant Louis Darmstadt.

*Barnett Parker*, for the defendants James Mehr and others.

*Abraham M. Katz*, for the defendant Vincent Manas.

*Sigmund Metz*, for the defendant Jobbers Credit Assn., Inc.

*Laughlin, Gerard, Bowers & Halpin*, for the defendant Corn Exchange Bank and Trust Company.

*William Flynn,* defendant in person.

McLaughlin, J. The plaintiff is the assignee of certain sub-contractors and materialmen of Charles H. Darmstadt, Inc., a

---

* Affd., 243 App. Div. 692.

plumbing and heating contractor. This corporation had a contract with the State of New York for the performance of work in the erection of a public improvement known as the Hospital for Treatment of Tuberculosis at Oneonta, N. Y. On July 20, 1933, the State of New York issued its check to the order of this contractor in the sum of $2,250. This check was deposited in an account of this contractor with the defendant Corn Exchange Bank Trust Company on July 21, 1933. There had been the relationship of banker and depositor between the bank and the contractor since 1919. On July 21, 1933, the contractor owed on unpaid notes this bank to the extent of $93,769.86. With regard to this amount there had been a settlement and on that settlement there was still due the sum of $8,701.70. There was a contract in existence between the bank and this contractor which contained the provision that the bank had a banker's lien on all deposits, accounts receivable and all securities and commercial paper which might come into its possession and which belonged to the contractor.

After the check had been deposited and before it had been paid, namely, on July 21, 1933, the contractor made an assignment for the benefit of creditors to the defendant Jobbers Credit Association. On July twenty-second the bank learned of the execution of this assignment and asserted its banker's lien on the balance of the proceeds of the check which amounted to $1,317.20. That is the amount which is the subject-matter of this action. The plaintiff claims that the proceeds of this check are trust funds and not subject to a banker's lien. The defendant, on the other hand, contends that while these funds may be trust funds, nevertheless it received them without actual knowledge thereof and that it did not have sufficient facts or circumstances such as would compel it to make inquiry or give it notice of the character of the funds.

The plaintiff relies upon section 25-a of the Lien Law which declares that all moneys due a contractor from a public improvement are trust funds in the hands of such contractor and are to be applied first to the payment of the debts due subcontractors, architects, etc. There is no question that all such funds are trust funds. (*Brockhurst Co., Inc.,* v. *City of Yonkers,* 150 Misc. 623, 626.)

I am also satisfied that this statute is constitutional, just as sections 36-a and 36-b of the Lien Law are constitutional. (*People* v. *Levitt,* 145 Misc. 621.) It is also plain that the bank may not be relieved of liability by reason of section 36-c of the Lien Law. The Legislature never intended by this section to nullify the beneficent provisions of sections 25-a, 36-a and 36-b of the Lien Law. The record of the proceedings in the Legislature and the

reading of these statutes as well as the general way in which business is done negative any such idea. The sole and only purpose of section 36-c was for the convenience of the contractors in the conduct of their business and does not in any way relieve the bank from the acceptance and retention of trust funds. The character of these funds is not changed by merely depositing them in a bank. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 111.)

Here two conflicting rights are arrayed against each other. The statute (Section 25-a of the Lien Law) says that the proceeds of the check which was deposited and paid are trust funds. Yet under our law the defendant bank had unquestionably a banker's lien upon the proceeds of this check. (*Hatch* v. *National Bank*, 147 N. Y. 184; *Meyers* v. *New York County Nat. Bank*, 36 App. Div. 482.) Section 25-a of the Lien Law merely makes the proceeds of this check trust funds. It destroys nothing in the law. It does not take away the right of a banker's lien. The question resolves itself into the simple proposition, did the bank have sufficient facts upon which to charge it with notice of the character of the funds deposited. It must be stated that unless these were present the character of the funds does not prohibit the attaching of the banker's lien. (*Hatch* v. *National Bank*, *supra; Meyers* v. *New York County Nat. Bank*, *supra.*)

There is no evidence of any kind to show that the defendant bank had actual notice of the trust character which attached to the check and its proceeds. It is urged that there have been sufficient facts established by the plaintiff to bring home knowledge to the defendant bank of the trust character of these funds. The question presented is whether there are sufficient facts established to charge the bank with knowledge. The burden in this respect was upon the plaintiff. I do not think the plaintiff has met it successfully. The mere fact that it was the check of the State of New York is not sufficient, even though the bank knew that the debtor had had financial difficulties and did work for the State and other public authorities. It is also plain that these circumstances were not sufficient to compel inquiry on the part of the bank to ascertain the character of the check which was merely deposited in the ordinary course of business and thus waive its lien.

There appears to be no case in our State courts which is identical with the decision in *Union Stock Yards Bank* v. *Gillespie* (137 U. S. 411). However, assuming that this is the doctrine of our courts, it is quite plain that it is not applicable to the facts disclosed here. In that case Mr. Justice BREWER sums up the facts as follows (at p. 419): " Summing up these various facts, it may be observed that the bank knew that the business of the Rappals

was a failing one; that, instead of making money, they were gradually going deeper and deeper into debt. It knew that the Rappals were not buyers, but simply consignees and factors; and that the moneys received by them on account of sales, of right belonged to their consignors and principals. It knew from the draft received that a shipment had been made to the Rappals. It knew that it had failed to give notice of the non-payment of the first and smaller draft, and so had put it out of the power of the consignors to protect themselves against the subsequent misconduct of the consignees and factors. It knew, or was chargeable with the knowledge of the fact, that the consignors were confiding in the consignees and factors on the strength of the representations it had made. Upon non-payment of the first and smaller draft, it knew that it was in a position to easily acquire knowledge of the exact facts; and with its means of knowledge it remained inactive and silent. With all these matters resting in actual or imputable knowledge, it accepts from the Rappals, consignees and factors, the proceeds of the sale of cattle consigned to them by the Gillespies."

From a consideration of all the evidence it would appear that the defendant bank cannot be chargeable with actual or imputable knowledge that the check deposited with it constituted trust funds.

The plaintiff having failed to sustain the burden of establishing knowledge on the part of the bank of such matters as would put the bank upon inquiry, judgment is granted in favor of the defendant dismissing the complaint upon the merits. No costs.