**HERNANDEZ v. FIRST NAT. BANK & TRUST CO. OF YONKERS et al.**

District Court, S. D. New York.

June 2, 1939.

for defendant Board of Education of City of Yonkers.

**GALSTON, District Judge.**

An action somewhat unusual in nature is brought by the plaintiff in the effort to secure payment for labor and materials which he supplied as a sub-contractor in connection with the construction of the Longfellow Junior High School in Yonkers, New York. A contract for the construction of that school was entered into on February 15, 1929, between the contractor, Kenneth McKay & Co., Inc., and the Board of Education of the City of Yonkers. The contract price was $611,660. It is alleged that there was owing to the sub-contractor, the plaintiff herein, from Kenneth McKay & Co., Inc., as a balance due on September 17, 1930, the sum of $32,081.58. On May 21, 1931, plaintiff filed in the office of the Comptroller of the City of Yonkers an alleged notice of lien.

The contract with the Board of Education provided that neither the final payment nor any part of retained percentages of instalment payments should become due unless the contractor, if required, should deliver to the Board a complete release of all liens arising out of the contract.

It is alleged that on March 22, 1930, and before the completion of the building, the contractor executed an assignment in favor of the First National Bank & Trust Company of Yonkers, one of the defendants herein, of the retained percentages and monies payable for extra work on said contract, to cover a loan of the maximum amount of $50,000. It is alleged that this assignment was secretly filed by the Bank with the Board of Education of the City of Yonkers and was not filed with the Comptroller of the City of Yonkers, the chief fiscal officer of the City of Yonkers.

Thereafter, in August 1930, the Board of Education paid to the contractor out of the retained percentage funds, $25,000, from which sum the defendant bank received $7,000; and in the month of September 1930 the Board paid and the bank received, under the aforesaid assignment, the sum of $50,000.

It is alleged that at the time of making these payments in August and September 1930 the defendants knew that the monies thus advanced were trust funds within the meaning of Sec. 36-a of the Lien Law of the State of New York, Consol.Laws, c. 33, and that they both knew that the

Prime Bros. & Duffy, of Yonkers, N. Y., for plaintiff.

Benjamin W. Moore, of Yonkers, N. Y. (Benjamin W. Moore and Milton L. Romm, both of Yonkers, N. Y., of counsel), for defendant First National Bank & Trust Co. of Yonkers.

Leonard G. McAneny, Corp. Counsel, of Yonkers, N. Y. (Leonard G. McAneny, Morris L. Rosenwasser, and Harold T. Garrity, all of Yonkers, N. Y., of counsel),

contractor had creditors whose claims 'for work, labor and services had not been paid.

It appears, now, from the complaint and the proof in this case, that an action was instituted for the benefit of unpaid lienors, entitled William A. Brockhurst Co., Inc., Plaintiff, against the City of Yonkers, New York, et al., wherein it was alleged that aforesaid sums of $25,000 and $50,000, aggregating $75,000, were applied for and used by Kenneth McKay & Co., Inc., the general contractors, for the payment of obligations other than those of materialmen and sub-contractors. In that action the plaintiff sought and obtained judgment, Brockhurst v. City of Yonkers, 150 Misc. 623, 268 N.Y.S. 637; Id., 244 App.Div. 799, 280 N.Y.S. 982; Id., 270 N.Y. 459, 1 N.E.2d 965, that there was owing from the defendant, the Board of Education of the City of Yonkers, in connection with the construction of the Longfellow High School, the sum of $99,944.76 with interest; but the alleged lien of the plaintiff herein was disallowed for failure to comply with Sec. 21, subdivision 2, of the Lien Law of the State of New York, as amended by Laws 1930, c. 859, § 12. That act provides in part that a lien may be discharged "when three months have elapsed since the filing of the notice of lien, unless, before the expiration thereof, either an order continuing said lien has been filed * * * or a notice of the pendency of an action to enforce said lien has been filed."

Following the entry of that judgment payments were made pursuant thereto and the records of the Comptroller's office show that lienors received against this balance of $99,944.76 the sum of $88,796.74. Now this plaintiff seeks to obtain the balance—$11,148.02—and in addition sufficient from both defendants to pay its judgment of $38,369.56 with interest against the contractor.

So far as the plaintiff's claim against the City of Yonkers for the alleged balance of the $99,944.76 is concerned, its difficulty arises from the confusion in the language of paragraph 22 of the complaint with the actual finding of the state court. It is alleged by the plaintiff here that the judgment in that action ordered the Board of Education to pay "to the contractors' job creditors" the sums therein provided," but the fact is that the judgment said nothing about job creditors but made provision for the payment of lien creditors.

The following finding of fact appears in the printed case on appeal in the Brockhurst case: "18. That at the time of the filing by the various defendants of their respective liens * * * there was due from the Board of Education * * * to the defendant Kenneth McKay & Co., Inc. * * *. the sum of $99,944.76, and which sum is applicable to the payment of the liens and claims hereinafter provided for, and only to such extent." And—"311. That to the extent to which the fund herein shall not be exhausted by the payment of the various valid liens hereinafter provided for with interest, costs and allowances, the said fund shall revert to the said Board of Education of the City of Yonkers."

In Brockhurst v. City of Yonkers, 270 N.Y. 459, 1 N.E.2d 965, the *lien* of the plaintiff herein is specifically disallowed.

Referring again to the record in the Brockhurst case the following conclusions of law were found: "1. There is now due and owing from the defendants, the Board of Education * * * *to the holders of valid liens,* as herein found, * * * so much of the sum of $99,944.76 as shall be necessary to pay the amount of allowances, costs and disbursements herein provided and filed, and subsisting liens herein found with interest on each." (Italics mine). And—"69. That the City of Yonkers and the Board of Education of the City of Yonkers, New York, are not entitled to credit for the payment of $75,000. * * * except as such amount as there shall be a surplus thereof in said fund after the provision has been made for the payment of all sums by way of valid liens * * *."

It must be recognized at once that the use of the term "fund" in connection with the balance of the amount paid by the Board to the *lien holders* is not quite accurate. The contract price for the building was $654,113.65. By omissions that sum was reduced to $652,879.32. Against that sum there were undisputed payments amounting to $550,828.89, leaving a balance of $102,050.43. The trial court in the Brockhurst case said that there should be deducted from that balance the fair and reasonable cost of completion which was found to be the sum of $2,105.67, thus "reducing said balance to $99,944.76". It was because the Board of Education was given no credit for the payment of $75,-000 made to the general contractor and by it in part paid to the defendant bank

that it was adjudged to pay the balance of $99,944.76, or such part of it as valid lienors were entitled to receive. Now in this case the Comptroller's statement shows that there was paid to valid lien creditors in full all that they were entitled to receive and said payments of interest and principal amounted to $88,796.74. Beyond that the Board of Education had no liability. It is not liable to the plaintiff herein as a valid lienor; nor is it subject to any claim of the general contractor, for the general contractor was paid in full. Nor does the aforesaid balance or credit constitute an ear-marked fund since, in effect, it was included in the money paid to the contractor either in the August payment of $25,-000 or the September payment of $50,000, or in both. Certainly it is not anything which the Board of Education holds in trust for anybody. In respect to any claim that the plaintiff may have had against the defendant Board of Education of the City of Yonkers, it had its day in court in the trial of the Brockhurst case. It was a party defendant in that action, made so by an order of the Supreme Court entered upon its consent; and it filed a cross-answer. It obtained a personal judgment for $38,-369.56 against Kenneth McKay & Co., Inc., the general contractor, but so far as the obligation of the Board of Education of the City of Yonkers was concerned that was fully determined in the Brockhurst action, and it would appear that the plaintiff is now seeking some supposed alternative remedy. Whatever its rights were against the Board it failed to sustain any in the Brockhurst suit, though it was in position to avail itself of all provisions of the Lien Law and particularly Sections 45 and 54 thereof, which read in part as follows:

"§ 45. * * * The court may adjust and determine the equities of all the parties to the action and the order of priority of different liens, and determine all issues raised by any defense or counterclaim in the action."

"§ 54. Judgment in case of failure to establish lien. If the lienor shall fail, for any reason, to establish a valid lien in an action under the provisions of this article, he may recover judgment therein for such sums as are due him, or which he might recover in an action on a contract, against any party to the action."

See also Lane & Son v. County of Westchester, 248 N.Y. 298, 162 N.E. 86.

In Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456, 457, the rule was laid down for the court by Justice Cardozo: "A judgment in one action is conclusive in a later one, not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." See also Reich v. Cochran, 151 N.Y. 122, 45 N.E. 367, 37 L.R.A. 805, 56 Am.St.Rep. 607.

Since it was entirely possible for the plaintiff to have had its rights adjudicated in the Brockhurst case by asserting a claim against the Board of Education, subordinate it is true to the claims of lien-creditors, it would appear now to be foreclosed from asserting its claim against that defendant.

A defense of res adjudicata would not avail the defendant bank, but as between the plaintiff and the bank, the controversy, stripped of everything but the bare essentials, discloses that both were creditors of Kenneth McKay & Co., Inc., and that the bank obtained payment of its obligation and the Hernandez Company did not. The payment to the bank by the contractor by means of checks issued to the contractor by the Board of Education was held to be collusive and illegal as against valid lienors of the contractor; but the Court of Appeals did not attempt to pass upon any other issue. It did not, for example, adjudge that the bank should refund the payments to the contractor.

Had a petition in bankruptcy been filed against the contractor undoubtedly a trustee in bankruptcy could have proceeded, if the facts warranted, to institute an action against the bank because of an asserted fraudulent preference; but the action at bar is not an action by a trustee for the benefit of creditors. A trust relationship between two general creditors, arising because one is paid and the other not, is difficult to perceive.

However, the theory of the plaintiff's case against the bank in brief is that the assignment to the bank, dated March 22, 1930, was ineffective because it was filed secretly with the defendant Board and not with the Comptroller of the City of Yonkers as required by Sec. 16 of the Lien Law of the State of New York; and that

in consequence the payments made to the bank in August and September in discharge of the notes of the general contractor held by the bank, constituted a diversion of trust funds to which the plaintiff is entitled to the extent of its judgment against the general contractor. In support of its position the plaintiff relies upon provisions of Sec. 25-a and Sec. 36-a of the New York Lien Law. The difficulty is that these amendments of the Lien Law became effective subsequent to the making of the challenged payments to the bank. The latter section became effective on October 1, 1930, the former July 1, 1932.

These sections read in part:

"§ 36-a. Contractor who diverts funds guilty of larceny. The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of sub-contractors * * *."

"§ 25-a. Contractor on public improvements who diverts funds guilty of larceny. The funds received by a contractor for a public improvement are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of sub-contractors," etc.

■ The provisions of the foregoing sections are not retro-active. On the contrary, Sec. 11 of Chap. 627 of the Laws of 1932, which includes Sec. 25-a of the Lien Law, provides in part: "§ 11. The provisions of the lien law as amended by this act shall not affect, impair or apply to mechanics liens * * * or to claims or liens acquired in any action or proceeding upon such mechanics liens * * * or to contracts for the improvement of real property made, prior to the date when this act takes effect * * *." A similar provision in Sec. 21 of Chap. 859 of the New York Laws of 1930 relating to the Lien Law, which included Sec. 36-a heretofore referred to, likewise provides that it shall not affect contracts or assignments ante-dating the effective date of the act.

■ Moreover it has been held that clauses in contracts relating to public improvements and providing for the postponing of payments of retained percentages until the contractor furnishes proof that there are no outstanding liens, inure to the benefit only of the state or municipality and are not available to job creditors. Arrow Iron Works v. Greene, 260 N.Y. 330

at page 344, 183 N.E. 515; Riverside Contracting Co. v. City of New York, 218 N.Y. 596, at pages 609, 610, 113 N.E. 564, Ann.Cas.1918C, 1075.

■ Finally it must be observed that if either of these sections of the Lien Law created a liability in the defendant bank and a corresponding right of action in the plaintiff, it appears that plaintiff has delayed too long in asserting its claim against the bank. The proof shows that the plaintiff had knowledge of the assignment and of the payments to the bank as early as September 1930. An action against the bank should have been commenced within six years. New York Civil Practice Act, Sec. 48, subdivisions 2 and 5. The complaint in this action was not filed until April 24th, 1937, and meanwhile the bank had surrendered the notes which it held to Kenneth McKay & Co., Inc., thereby discharging them, and it had also surrendered a collateral mortgage.

So far as the equities are concerned, the $75,000. payments made by the Board in August and September 1930 were in effect restored to the Board in the Brockhurst case. Hence so far as creditors of the general contractor are concerned the situation is as though no payments had been made to the bank.

For the foregoing reasons the complaint must be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.