W. A. BROCKHURST COMPANY, INC., Plaintiff, *v.* CITY OF YONKERS et al., Defendants, and FIRST NATIONAL BANK & TRUST COMPANY OF YONKERS, Impleaded Defendant.

Supreme Court, Westchester County, August 13, 1942.

*Francis J. Duffy* for plaintiff.

*Leonard G. MacAneny, Corporation Counsel,* for City of Yonkers and Board of Education of City of Yonkers, defendants.

*Benjamin W. Moore* for impleaded defendant.

PATTERSON, J.  On or about February 15, 1919, the Board of Education of the City of Yonkers entered into a contract with Kenneth Mackay & Co., Inc., for construction of a school building known as the " Longfellow Junior High School ", the contract price of which with. additions and deductions was $654,113.65. The contract provided that the Board may release a portion of. retained percentages after the eighty-five-per-cent payments referred to in Paragraph Twelfth of the contract, when in its judgment the City would be amply protected by the balance retained, and that the value of the unfinished work to be done under the contract would not amount to more than fifty per cent of the balance of the retained percentages after the release.

In two instances, the Board of Education released payments to· the contractor out of retained percentages, which releases were covered by resolutions of the Board of Education adopted pursuant to the recommendations of the committee on architecture and construction.  The first release is under date of August 14, 1930, to the contractor, Kenneth Mackay & Co., for $25,000.  The second was under date of September 11, 1930, for $50,000.  In each instance, the contractor, pursuant to the resolution of the Board, furnished an affidavit that all persons employed in and about said work had been paid all amounts due them, and that there were no liens or claims for work performed or materials furnished in connection with said contract, and that none would be filed.  Concededly, both affidavits were false in this respect, and known to the contractor to be false.

On March 22, 1930, the contractor entered into an agreement with the defendant, the First National Bank & Trust Company of Yonkers, whereby the bank agreed to loan the contractor $50,000, and the contractor, as collateral security for such loan, thereby assigned and transferred to the bank all its right, title and interest in and to all retained percentages that might accrue to the contractor under the terms of the contract with the Board

of Education. A duplicate copy of the said agreement was filed with the Board of Education, but none was filed with the Comptroller or other financial officer of the City under the provisions of section 16 of the Lien Law, and no notice was given to the Comptroller of the City of such assignment.

At the time of the foregoing agreement, the contractor was indebted to the bank for $27,780 on its notes held by the bank. The first of the said payments made out of retained percentages was the sum of $25,000 and was included in a check of $34,553.25 given by the City to the contractor dated August 21, 1930, and the second of said payments out of retained percentages, in the sum of $50,000, was covered by a check in that amount, and made out and delivered to the contractor, Kenneth Mackay & Co., and dated September 19, 1930. These two checks were indorsed and delivered for deposit by Kenneth Mackay & Co. to the defendant bank, and the bank received the moneys represented by the two checks and appropriated to itself and retained $7,000 out of the retained percentages of $25,000 included in the first check, and $47,527.05 out of the said $50,000 represented by the second check, or an aggregate of $54,527.05.

After the bank received the money, thirty-seven mechanics' liens aggregating $116,000 were filed against the job, thus establishing the falsity of the statements in the two affidavits above referred to " that all persons employed by them in and about said work had been paid all amounts due them, and that there are no liens or claims for work performed or materials furnished in connection with said contract, and that none will be filed ". These liens were foreclosed against the contractor and the Board of Education, in an action in the Supreme Court, Westchester County, entitled " W. A. Brockhurst Co. Inc., plaintiff against The City of Yonkers, N. Y., Kenneth Mackay & Co. Inc. et al., defendants ", which action was finally determined by the Court of Appeals (270 N. Y. 459) and resulted in a payment, including interest, by the City on behalf of the Board of Education, which amounted to $101,473.05, which sum was in addition to the said sums of $25,000 and $50,000 heretofore referred to, which were disallowed by the court as payments made out of and credited to the fund for the construction of the building.

While the original Brockhurst action was pending, the First National Bank and Trust Company of Yonkers was vouched in and impleaded as a defendant. The impleaded action, which constitutes the case at bar, was severed during the Brockhurst trial before judgment in that case. The gravamen of the com-

plaint against the bank, as amended during the trial, is "that at the time the checks in question were delivered to the contractor and deposited with the bank, that its officers and agents well knew at the time that there were other claims existing against the funds held by the City of Yonkers, and well knew that any payments represented by the two checks were not legally payable by the City of Yonkers out of the said fund, and well knew that the said two checks represented no payments that could be legally made by the City except for the payment of lienholders, materialmen and subcontractors under said contract, and that the execution, delivery and filing of the assignment, and the receipt of the said two checks, the collection of the proceeds thereof, and the application thereof were with the intent and purpose on the part of the impleaded defendant to defraud the City of Yonkers of the said sum of money, and by reason of such acts on the part of the impleaded defendant, the said City of Yonkers has been defrauded of the said sum of money".

This brings us to the consideration as to what was the duty of the bank under the circumstances, and that duty is measured largely by the fact whether or not the funds received by it from the contractor and appropriated to its own use were trust funds. I am mindful of the fact that I indicated to counsel that it was my opinion that the funds were trust funds, but that was under the misapprehension that the Appellate Division had held in the case of *Brockhurst* v. *City of Yonkers* (244 App. Div. 799) that the moneys received by the bank were trust funds. It is true that the Trial Judge in the *Brockhurst* case (150 Misc. 623, 628) wrote: "Under the provisions of the contract the retained percentage fund was in the nature of a trust for the benefit of unpaid subcontractors and materialmen and the board and city owed a duty to the subcontractors to safeguard the withdrawal or payment thereof under circumstances operating as a fraud against such subcontractors." Even in view of this writing, it is my opinion the City cannot ground its rights against the bank on the theory of a trust, since the money was a trust for the benefit of job creditors, and the City does not belong to that class. On the contrary, the District Court Federal Judge in the case of *Hernandez* v. *First Nat. Bank & Trust Co. of Yonkers* (27 F. Supp. 874) held that the moneys paid to the bank by Mackay were not trust funds. Generally speaking, rights are not derived from a trust in favor of one who is not a beneficiary.

In the *Hernandez* case, the plaintiff, an unpaid subcontractor, having been denied relief against the City by the Court of

Appeals, since he had not been a lienor, sued the bank on the theory that the bank had diverted trust funds and had entered into a conspiracy and fraud in receiving the money from Mackay. In dismissing the complaint, the Federal court made the following conclusion of law: " The money represented by the payments to the contractor, and the payments to the bank, were not trust funds under either the statutory or case law of New York for the benefit of the complainant ".

It will not avail the City to urge that the money paid to the bank was trust money under the provisions of sections 36-a and 25-a of the Lien Law, because those statutes became effective after the assignment to the bank, and after the payments to it, and are not by express provision of Legislature retroactive in operation. Assuming that the funds were trust funds, and the bank was reasonably charged with notice of that character, there is sufficient in the evidence to justify the finding that the bank was negligent in appropriating the payments to its own use. It is my opinion that the fund was not a trust fund and, even if it were, the evidence falls short to support a finding that the bank knowingly accepted the money as trust funds.

I think the case of *Barclay* v. *Corn Exch. Bank Trust Co.* (155 Misc. 684, affd. 243 App. Div. 692, affd. 267 N. Y. 630) is helpful. That was a case in which was claimed a diversion of trust funds by a bank under circumstances not unlike the instant case, and arose after section 25-a of the Lien Law became effective. The court there wrote: " The mere fact that it was the check of the State of New York is not sufficient, even though the bank knew that the debtor had had financial difficulties and did work for the State and other public authorities. It is also plain that these circumstances were not sufficient to compel inquiry on the part of the bank to ascertain the character of the check which was merely deposited in the ordinary course of business and thus waive its lien."

If the Corn Exchange Bank's actual knowledge of the contractor's general assignment was not enough to charge notice, then mere knowledge of Mackay & Co.'s financial condition without actual knowledge of its debts to subcontractors would seem to be insufficient for that purpose.

The City relies heavily on *Grace* v. *Corn Exch. Bank Trust Co.* (287 N. Y. 94), but I think that case is distinguishable from the one at bar. There the funds were unquestionably trust funds, and the trust nature of the funds was there shown on the face of the checks themselves. There was nothing here on the face of it to show that the money was trust money. A mis-

appropriation was there discovered by the bank's checking its own records. Here there was nothing in the bank's own records to show that Mackay & Co. was carrying out a wrongful appropriation. In the *Grace* case, the beneficial owner of the trust money recovered from the bank. In this case the beneficial owners of any trust moneys, the unpaid job creditors, are not suing the bank.

Presupposing that the fund on deposit was a trust fund and, assuming that the bank had knowledge of that fact, the bank might incur liability in that it knowingly made itself a party to a fraud but, as I said above, there is no evidence that the bank had knowledge that the money was part of a trust fund.

In the *Brockhurst* case (150 Misc. 623, affd. 244 App. Div. 799, mod. 270 N. Y. 459, reargument denied 271 N. Y. 635, *supra*) there was a finding that there was collusion between the Board of Education and Mackay & Co., but there was no finding that there was any collusion or fraud between the Board of Education or Mackay & Co. and the bank. Even had there been, it would not be binding upon the bank, which was not a party to that action. The only pertinency to such a finding would be whether the City, having been found guilty of fraud and collusion, is precluded now from recovering over from the bank under the rule prohibiting contribution between wrongdoers, but that is purely academic in view of the disposition here made of the case. I think the rule that there can be no contribution between joint wrongdoers or tort-feasors does not apply to the case of a municipality. The moneys of a city in the first instance belong to or are held in trust for the taxpayers, and no action of any city employee which is illegal or collusive and fraudulent, whereby city moneys come into the possession of any party participating in any illegal act, or fraud and collusion, can divest the taxpayers or the municipality of the right to recover such money. The municipality is not thereby a party *in pari delicto*. (See *People* v. *Fields,* 58 N. Y. 491; *Village of Fort Edward* v. *Fish,* 156 N. Y. 363.)

In my opinion, the evidence fails to show that the bank procured the assignment and received payment of Mackay & Co.'s notes as the result of a fraudulent transaction. At the most, the evidence shows that between the delivery of the assignment on March 22nd, and the final payment on September 19th, Snodgrass, the bank's vice-president, was generally familiar with Mackay & Co.'s affairs, that he talked to Mackay at various times about the progress of the job, and possibly talked to subcontractors about Mackay & Co.'s financial condition. He

received no complaints from the subcontractors about Mackay & Co.'s unpaid bills. Such inquiry and conduct would seem to reflect no more than a bank's natural curiosity about one of its debtors' affairs, and is not an attempt to defraud the City.

I think the bank was led into the belief that all was well between Mackay & Co. and its creditors by the collusive acts between the Board of Education and Mackay & Co. There, apparently, is where the trouble started — not with the bank.

I think the City has failed to prove a cause of action against the bank, and its cross claim should be dismissed.