JOSEPHINE BISCHOFF, as Administratrix with the Will Annexed of JOSEPHINE F. SCHNEIDER, Deceased, Respondent, *v.* YORKVILLE Bank, Appellant.

Banks — trust funds — when bank which is a depositary of trust funds deposited by an executor to his individual account is liable for such funds checked out by executor and diverted to his own use — sufficiency of notice to such bank of illegal use of such fund by executor.

1. A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. The bank has the right to assume that the fiduciary will apply the funds to their proper purposes under the trust, and does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, to the knowledge of the bank, credits created by deposits of trust funds. But its participation in a diversion of such funds may result from either acquiring

an advantage or benefit directly through or from the diversion, or joining in a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it.

2. Where an executor deposited trust funds to his individual account by checks upon another bank which were signed by him in the name of the estate, and afterward paid from such deposits then consisting wholly of trust funds a personal indebtedness to the bank of deposit, the depositary is not only liable for the diversion of the sums received by it, but is charged by the law to take the reasonable steps or action essential to keep it from thereafter paying to the executor as his own the moneys which were not his but were trust funds, and was bound by the information which it could have obtained if an inquiry on its part had been pushed until the truth had been ascertained, and on failure to do so will be held liable for moneys so paid out. (*Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, distinguished.)

*Bischoff* v. *Yorkville Bank*, 170 App. Div. 679, modified.

(Argued March 22, 1916; decided May 2, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 4, 1916, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Phelan Beale* and *Theodore Schultheis* for appellant. Poggenburg's transfer of the moneys from the Bowery Bank to his individual account with defendant contravened no law, and the defendant by reason thereof was not obligated to investigate the purposes to which Poggenburg devoted withdrawals from this personal account. (*Blood* v. *Kane*, 130 N. Y. 514; *Schmittler* v. *Simon*, 101 N. Y. 554; *Matter of Barnes*, 140 N. Y. 568; *Nat. Park Bank* v. *Seaboard Bank*, 114 N. Y. 128; *Leitch* v. *Wells*, 48 N. Y. 595; *Spencer* v. *Weber*, 163 N. Y. 502; *Havana C. R. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422.) The loans to Poggenburg and pay-

ment thereof by him were in the ordinary course of trade and in the ordinary relation between a bank and its depositor. There was no collusion or fraud for the personal benefit of the defendant, nor did the circumstances of said loans constitute notice so as to bind defendant. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Gray* v. *Johnston*, L. R. [3 H. L.] 1; *Coleman* v. *B. & O. U. Bank*, L. R. [2 Ch. Div. 1897] 243.)

*James A. Foley* for respondent. The defendant bank received the checks in question with notice of the violation of the trust, and is charged with knowledge that the executor was fraudulently using the estate funds for his personal purposes. (*Squire* v. *Ordemann*, 194 N. Y. 394; *Gerard* v. *McCormack*, 130 N. Y. 261; *Ward* v. *City Trust Co.*, 192 N. Y. 69; *Rochester Co.* v. *Pavior*, 164 N. Y. 281; *Marshall* v. *de Cordova*, 26 App. Div. 615; *Niagara Woolen Co.* v. *Pacific Bank*, 141 App. Div. 265; *First Nat. Bank* v. *Broadway Bank*, 156 N. Y. 459; *Cohnfeld* v. *Tanenbaum*, 176 N. Y. 126.) The defendant participated in the diversion of funds, and received and applied these funds on the personal notes made by the executor to the Yorkville Bank. (*Niagara Woolen Co.* v. *Pacific Bank*, 141 App. Div. 271; *Gerard* v. *McCormack*, 130 N. Y. 268; Story on Agency, § 251; *Farmers' Loan & Trust Co.* v. *Walworth*, 1 N. Y. 433.)

COLLIN, J. The plaintiff has recovered a judgment against the defendant for the sum of $13,329.04, apart from the sums of interest and costs. The basic facts as found are: In March, 1908, H. F. W. Poggenburg was appointed and qualified as executor of the will of Josephine F. Schneider, deceased. The plaintiff here became his successor in December, 1914, through his removal. In April, 1908, Poggenburg as executor deposited the moneys of the estate in the Bowery Bank in the city of New York in the name of " Estate of Josephine F.

Schneider by H. F. W. Poggenburg, executor." He, as an individual, had at that time a deposit account with the defendant, Yorkville Bank. In April, 1908, he sent by mail to the defendant a check upon the Bowery Bank in the sum of five hundred dollars, payable to the order of the defendant, signed " Estate of Josephine F. Schneider by H. F. W. Poggenburg, executor." The defendant received the check in due course, indorsed and transmitted it through the New York Clearing House to the Bowery Bank, which paid it out of the funds of the estate. The defendant placed the proceeds of it to the credit of Poggenburg in his individual account with the defendant. Between April, 1908, and November, 1911, the defendant received through the mail twenty-nine other checks identical, except as to date and amount, with that described (except that one was payable to the order of Poggenburg and by him indorsed payable to the order of the defendant, which counsel assume and we will assume has the character and effect of the others), and dealt with them as it did with that fully set forth. The findings describe with particularity the manner in which the officers and employees of the defendant, in creating the credits, dealt with the checks. The amounts of the checks aggregated $14,005. Additional moneys from sources other than the estate were deposited by Poggenburg with the defendant and credited to him in his account during the interval involved. In April, 1908, the defendant owned the promissory note of Poggenburg for $1,750, which matured June 3, 1908. On June 3, 1908, Poggenburg paid the defendant from his individual account with it, in which the amount standing to his credit was less than the proceeds of the estate checks theretofore deposited therein, $765 upon the note, including interest, and renewed $1,000 of the loan by a new note maturing September 1, 1908. On September 1, 1908, this note was paid the defendant in the same manner and under the like condition. In February, 1911,

the defendant was paid, likewise, $1,000 upon a note of Poggenburg held by it for the sum of $2,000. The decree of the Surrogate's Court of April, 1915, by which Poggenburg was removed as the executor and his accounts as executor were settled, declared that he was liable to the estate for the aggregate sum of the thirty checks with interest. All of the funds so withdrawn by the executor from the Bowery Bank and deposited in and placed by the defendant to his individual credit were checked out by Poggenburg in payment of said notes, or for his personal purposes, except the sum of $675.96. Throughout the transactions the defendant made no inquiry at any source as to the deposits of the checks of the executor or the withdrawals from the individual account with it. The judgment recovered by the plaintiff was for the sum of those funds, less the $675.96, with interest and costs. It was affirmed by the Appellate Division by a divided court. The dissenting justice declared that the recovery should have been only the sums Poggenburg paid the defendant. We have reached a conclusion differing from both.

The transfer of the funds of the estate to and the crediting of them by the defendant to Poggenburg, in his individual account, did not overpass the legal right of the executor or the defendant. The method was unwise and hazardous; it did not, however, in and of itself, constitute a conversion. The title to the funds was in the executor, and he possessed the full control and disposition of them. As executor, however, and not as an individual, and for the purposes of administration, was he thus empowered. For many purposes third persons are entitled to consider an executor the absolute owner of the personal assets in his hands. Although he holds the title to them, he holds it in trust to pay the debts and execute the will of the testator. In equity he is a mere trustee charged with the performance of the will. (*Leitch* v. *Wells,* 48 N. Y. 585; *Blood* v. *Kane,* 130 N. Y. 514;

*Smith* v. *Ayer,* 101 U. S. 320; *Hartnett* v. *Wandell,* 60 N. Y. 346.) A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. There are judicial decisions, in cases in which the fiduciary has converted the funds, which hold the contrary. (*United States Fidelity & Guaranty .Co.* v. *People's Bank,* 127 Tenn. 720; *Bank of Hickory* v. *McPherson,* 102 Miss. 852.) The rule stated by us is, however, established in this and other jurisdictions, as the decisions hereinafter cited will disclose, and accords with reason.

The acts of the executor and the defendant in depositing and crediting in the individual account of Poggenburg the proceeds of the checks did not affect the character of the trust funds. The form of each check, in which the defendant was payee, imported the ownership of the moneys represented in them by the executor, and informed the defendant that Poggenburg was depositing with it moneys which were not his and were the executor's. (*Squire* v. *Ordemann,* 194 N. Y. 394; *Ward* v. *City Trust Co.,* 192 N. Y. 61; *Cohnfeld* v. *Tanenbaum,* 176 N. Y. 126.) The defendant knew at all times that the credits created by the deposits of those moneys, through the checks of the executor, were equitably assets of the estate and owned by the executor. Trust funds do not lose their character as such by being deposited in a bank for the individual credit and account of the person who is trustee. It may be stated as a general principle that if money deposited in a bank was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his individual bank account. (*Van Alen* v. *American Nat. Bank,* 52 N. Y. 1; *Union Stock Yards Bank* v. *Gillespie,* 137 U. S. 411; *National Bank*

v. *Insurance Co.*, 104 U. S. 54; *Roca* v. *Byrne*, 145 N. Y. 182.)

Inasmuch as the defendant knew that the credits to Poggenburg created by the proceds of the checks were of a fiduciary character and were equitably owned by the executor, it had not the right to participate in a diversion of them from the estate or the proper purposes under the will. Its participation in a diversion of them would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in a a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Squire* v. *Ordemann*, 194 N. Y. 394; *Union Stock Yards Bank* v. *Gillespie*, 137 U. S. 411; *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Allen* v. *Puritan Trust Co.*, 211 Mass. 409.) In the case last cited it is stated: "The principle governing the defendant's liability is, that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit, or where charged with notice of the conversion join in assisting others to appropriate it for their private benefit, without being liable to refund the money if the appropriation is a breach of the trust," and numerous decisions are cited. (p. 422.) A bank does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, in the knowledge of the bank, credits created by deposits of trust funds. The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. The presumption is, and after the deposits are made remains until annulled by adequate notice or knowledge, that the depositor would preserve or lawfully apply the trust funds. The contract, arising by implication of

law, from a general deposit of moneys in a bank is, that the bank will, whenever required, pay the moneys in such sums and to such persons as the depositor shall direct and designate. Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly. (*Safe Deposit & Trust Co.* v. *Bank,* 194 Pa. St. 334; *Batchelder* v. *Central National Bank,* 188 Mass. 25; *United States Fidelity & Guaranty Co.* v. *Home Bank for Savings,* 88 S. E. Rep. 109; *Brookhouse* v. *Union Publishing Co.,* 73 N. H. 368; *Freeholders of Essex* v. *Newark National Bank,* 48 N. J. Eq. 51; *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.,* 198 N. Y. 422.)

In the present case Poggenburg paid to the defendant, as his creditor, on June 3, 1908, the sum of $765 from his account with the defendant. The finding of the trial court, supported by the evidence, is that the account at that time was constituted wholly from the trust funds. At that time and through the transaction the defendant knew that Poggenburg had appropriated $765 of those funds for his private benefit. The presumption that he would not thus violate his duty and lawful right — that he would apply the moneys to their proper purposes under the will then ceased to exist. There was absolute proof in the possession of the defendant to the contrary. The defendant had no longer the right to assume that in paying the checks of Poggenburg it was paying the executor's moneys to the executor and not to Poggenburg, the individual, or that Poggenburg would use the moneys lawfully. It had knowledge of such facts as would reasonably cause it to think and believe that Poggenburg was using the moneys of the executor for his individual

advantage and purposes. Those facts indicated that the payment to it was not an isolated incident; they indicated, rather, that it was within a method or system. Having such knowledge, it was under the duty to make reasonable inquiry and endeavor to prevent a diversion. Having such knowledge, it was charged by the law to take the reasonable steps or action essential to keep it from paying to Poggenburg as his own the moneys which were not his and were the executor's, and was bound by the information which it could have obtained if an inquiry on its part had been pushed until the truth had been ascertained. It did nothing of that sort, and by supinely paying, under the facts here, as found, the subsequent checks of Poggenburg, it became privy to the misapplication. It must now pay the plaintiffs the moneys of the estate which it had and received on and after June 3, 1908. (*Allen* v. *Puritan Trust Co.*, 211 Mass. 409; *Duncan* v. *Jaudon*, 15 Wall. 165.)

What we have written makes clear, we think, the distinction between the instant case and that of *Havana Central Railroad Co.* v. *Knickerbocker Trust Co.* (198 N. Y. 422), upon which the defendant firmly relies.

We do not consider the question, because it is not here, as to whether or not a bank would be protected in honoring a check of a fiduciary depositor, regularly drawn upon his account as such fiduciary, and presented by him, even though it had actual notice that he would misappropriate the proceeds. The decisions are not uniform upon this question. The distinction between that question and the question *sub judice* is substantial. In the one, the bank pays, under its implied contract, the moneys to the rightful owner and the depositor; in the other, it pays the moneys to one who, as it knows, is not the rightful owner, after notice that the payee is converting them.

We have examined the other points of the appellant's brief and find nothing which requires discussion.

The trial court adjudged a recovery of the principal sum

of $13,329.04, the aggregate sum of the amounts of the thirty checks, less the sum of $675.96, which was not misappropriated. Poggenburg had deposited with the defendant prior to June 3, 1908, $2,300 of the trust funds. There was to his credit on that date $1,298.65. Prior to that date, therefore, he had misappropriated $1,001.35, to which action the defendant was not privy and for which it was not liable. It follows that the principal sum recovered should have been $12,327.69, and the interest in the sum of $3,000.35, computed as directed in the decision of the trial court.

The judgment should be modified accordingly and as modified affirmed, without costs to either party.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, CARDOZO, SEABURY and POUND, JJ., concur.

Judgment accordingly.