Mildred P. Grace et al., as Trustees under the Will of David Fox, Deceased, Appellants, *v.* Corn Exchange Bank Trust Company, Respondent.

Argued March 10, 1941; decided November 27, 1941.

*Eugene A. Sherpick, Harold R. Medina, Amy Wren, William Gilbert, James J. Regan* and *John W. Jordan* for appellants. Defendant's participation in the trustee's embezzlements through its repeated receipt and acceptance, without investigation or inquiry, of the proceeds of funds which it must be deemed to have known were of a fiduciary character rendered it liable, as matter of law, for the total embezzlements, and this apart from any question of its professed good faith in such transactions. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Gilliland* v. *Lincoln-Alliance Bank & Trust Co.,* 239 App. Div. 68; 264 N. Y. 517; *Newton* v. *Scott,* 254 App. Div. 140; *Fidelity & Casualty Co.* v. *Farmers Nat. Bank,* 275 N. Y. 194; *Pratt* v. *Commercial Trust Co.,* 105 Misc. Rep. 324; 188 App. Div. 881; *Keller* v. *First Nat. Bank & Trust Co.,* 163 Misc. Rep. 925.) The form of each check which the trustee drew against the trust account in and of itself and as matter of law informed defendant that the trustee was depositing with it moneys of the trust. Defendant, therefore, cannot be heard to assert that it did not know the fiduciary character of these funds. (*Fairchild* v. *Fairchild,* 64 N. Y. 471; *Hotopp* v. *Huber,* 160 N. Y. 524; *Flour City Nat. Bank* v. *Widener,* 163

N. Y. 276; *Riley* v. *Larocque*, 163 Misc. Rep. 423; *Squire* v. *Ordemann*, 194 N. Y. 394; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Cohnfeld* v. *Tanenbaum*, 176 N. Y. 126; *Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285; *Gilliland* v. *Lincoln Alliance Bank & Trust Co.*, 239 App. Div. 68; 264 N. Y. 517; *Employers' L. A. Corp., Ltd.*, v. *Hudson River Trust Co.*, 250 App. Div. 159.) The facts before defendant and actually in its possession conclusively charged it with notice of the trustee's transfers. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225; *Payne* v. *Freer*, 91 N. Y. 43; *Title Guarantee & Trust Co.* v. *Emadee Realty Corp.*, 136 Misc. Rep. 328; *Becker* v. *Fuller*, 99 Misc. Rep. 672; *Newton* v. *Scott*, 254 App. Div. 140.)

*Frank C. Laughlin, John J. Halpin, Arthur Butler Graham, Albert Falck* and *Joseph W. Kirkpatrick* for respondent. Liability for participation with a trustee in his breach of trust must be based on actual conscious knowledge. (*Stark* v. *National City Bank*, 278 N. Y. 388; *McArthur* v. *Gordon*, 126 N. Y. 597; *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; 230 N. Y. 545; *Jackson* v. *Smith*, 254 U. S. 586; *Gillies* v. *Gillies*, 239 App. Div. 582; *Lonsdale* v. *Speyer*, 249 App. Div. 133; *Eastern Mut. Ins. Co.* v. *Atlantic Nat. Bank*, 260 Mass. 485; *Anderson* v. *Foster*, 112 Ga. 270; *Fifth National Bank* v. *Village of Hyde Park*, 101 Ill. 595; *American Surety Co.* v. *Waggoner Nat. Bank*, 83 Fed. Rep. [2d] 99; *Bank of Vass* v. *Arkenburgh*, 55 Fed. Rep. [2d] 130.) The bank should not be held liable on the ground of constructive knowledge or notice, either on the theory that it was put upon inquiry and did nothing or on the theory that there was imputed to it the aggregate or composite knowledge of all information that came to the attention of its employees in the performance of their routine ministerial duties. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Manufacturers Trust Co.* v. *U. S. Mortgage & Trust Co.*, 244 N. Y. 550; *Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285; *White-Dulany Co.* v. *Craigmont State Bank*, 48 Ida. 100; *Tattnall Bank* v. *Harvey*, 185 Ga. 752.) The bank is not chargeable with composite knowledge

of fragmentary information incidentally or casually received by its employees. (*State* v. *Brown County Bank*, 112 Neb. 642; *Goodloe* v. *Godley*, 21 Miss. 233; *Farmers Bank* v. *United States Fidelity & Guaranty Co.*, 28 Fed. Rep. [2d] 676; *Aneless Corp.* v. *Woodward*, 262 N. Y. 326; *Butler* v. *Mich. Mut. Life Ins. Co.*, 184 N. Y. 337; *Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *Marsh, Merwin & Lemmon* v. *Wheeler*, 77 Conn. 449; *Willard* v. *Denise*, 50 N. J. Eq. 482.) The bank owed no affirmative duty of vigilance to the beneficiaries, but merely owed them the negative duty of not knowingly and consciously participating in a misappropriation by the trustee, and the number of transactions did not give rise to any further duty. (*Comstock* v. *Wilson*, 257 N. Y. 231; *Deyo* v. *Hudson*, 225 N. Y. 602; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Mahan* v. *Brown*, 13 Wend. 261.) There was no causal connection between the trust moneys innocently received by the bank and the trustee's other misappropriations. (*Massachusetts B. & Ins. Co.* v. *Standard T. & Sav. Bank*, 334 Ill. 494; *Gray* v. *Johnston*, L. R. 3 H. L. 1; *New Amsterdam Casualty Co.* v. *First Nat. Bank*, 144 Okla. 180; *Bank of Commerce* v. *U. S. F. & G. Co.*, 54 Fed. Rep. [2d] 578; *Wichita Royalty Co.* v. *City National Bank*, 95 Fed. Rep. [2d] 671.) When trust funds have been deposited by a trustee in his personal account and the bank has a claim against the trustee personally, it is entitled to use the balance of his personal account in payment of his obligations due to the bank when the bank acts innocently and has no knowledge that fiduciary funds are being encroached upon. (*Hatch* v. *Fourth Nat. Bank*, 147 N. Y. 184; *Barclay* v. *Corn Exchange Bank Trust Co.*, 155 Misc. Rep. 684; 243 App. Div. 692; 267 N. Y. 630; *Updike* v. *Manufacturers Trust Co.*, 243 App. Div. 15; 267 N. Y. 528; *Meyers* v. *N. Y. County Nat. Bank*, 36 App. Div. 482; *Marsh* v. *Oneida Central Bank*, 34 Barb. 298; *People* v. *St. Nicholas Bank*, 44 App. Div. 314.)

*Frederick E. Crane* and *Paul G. Reilly* for New York State Bankers Association, *amicus curiæ*. The bank is

liable only where it has been clearly demonstrated that the bank has actual knowledge of the fiduciary's diversion. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Manufacturers Trust Co.* v. *U. S. Mortgage & Trust Co.,* 244 N. Y. 550; *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Germantown National Bank* v. *Employers L. A. Corp.,* 238 App. Div. 31; 263 N. Y. 654; *Clarke* v. *Pub. Nat. Bank & Trust Co.,* 259 N. Y. 285; *Allan* v. *Puritan Trust Co.,* 211 Mass. 40; *Gray* v. *Johnston,* L. R. 3 H. L. 1; *Maryland Casualty Co.* v. *City National Bank,* 29 Fed. Rep. [2d] 662; *U. S. Fidelity & Guaranty Co.* v. *Union Bank & Trust Co.,* 228 Fed. Rep. 448.) A rule requiring the bank to keep informed as to the composition of the fiduciary's individual account wholly violates the ordinary standards of business expedition and economy and renders impossible of performance the ordinary current operations and business of the modern bank in its relations with its depositors. (*Stark* v. *National City Bank,* 278 N. Y. 388; *Aneless Corp.* v. *Woodward,* 262 N. Y. 326; *State* v. *Brown County Bank,* 112 Neb. 642; *Willard* v. *Denise,* 50 N. J. Eq. 482; *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Cahan* v. *Empire Trust Co.,* 274 U. S. 473; *Rodgers* v. *Bankers Nat. Bank,* 179 Minn. 197; *Goodwin* v. *American National Bank,* 48 Conn. 550.)

LEHMAN, Ch. J. In June, 1930, Chessman Kittredge was appointed as " successor trustee " under the will of David Fox in place of George L. Fox, the trustee originally named in the will, who had been declared incompetent. Kittredge as trustee received assets of the estate valued at almost $450,000. From time to time he sold most of these assets and usually the proceeds were deposited in an account which he opened, as trustee, in the Eighty-sixth Street branch of the defendant bank. We shall hereafter, in this opinion, refer to that account as the " trust account." Kittredge died in May, 1936, a bankrupt and a suicide. There were few assets remaining in the estate. Kittredge had wasted or appropriated to his own use almost the entire trust fund.

In February, 1930, four months before Kittredge was appointed trustee, under the will of David Fox, deceased,

and opened a trust account in the Eighty-sixth Street branch of the Corn Exchange Bank, he applied to Arthur L. Sherer, now deceased, a vice-president of the bank, for a loan of $100,000 to Tompkins & Bevers, Inc., a corporation engaged in business in the village of Hastings as dealer in coal and building materials. The purpose of the loan was to obtain funds for the purchase of stock in another corporation engaged in a similar business. Kittredge was treasurer of the corporation and, with one Paul Randall, owned its stock and controlled its affairs. The loan was made in April, 1930, upon the note of the corporation endorsed by Kittredge and Randall and secured by the stock which was bought and paid for by the proceeds of the loan. Kittredge also borrowed $35,000 from the bank upon his personal note well secured by marketable collateral. That loan was granted almost as a routine matter. In February, 1930, when Kittredge applied for these loans, he opened a personal account in the Eighty-sixth Street branch of the bank and an account of the corporation of which he was treasurer.

Kittredge was at that time a man of good reputation. He was a college graduate and a member of the bar, though he was not engaged in active practice. He had business experience. He and his family had an accepted social position. His father-in-law was a wealthy man and a friend and neighbor of Sherer. Sherer had no reason to question the honesty of Kittredge and, so far as appears, Sherer arranged the loans to Kittredge and his corporation as a business transaction of advantage to the bank. The trust account, opened thereafter by Kittredge, doubtless seemed a very desirable account for the bank to obtain.

If a bank wrongfully appropriates to its own use moneys deposited with it, it is of course liable for the money it has converted, as any other wrongdoer would be liable for damages caused by his wrong. So, too, if a bank connives with a trustee and knowingly assists the trustee to embezzle funds he holds as fiduciary, the bank is liable for the moneys embezzled just as any other person, who knowingly assists

a wrongdoer, would be liable as a joint wrongdoer for a wrong so committed. The plaintiffs, who have been substituted as trustees in place of Kittredge, seek in this action to hold the bank liable for the damage caused to the estate by Kittredge's wrongful conduct on the asserted ground that the bank joined with Kittredge in appropriating the assets of the estate. At Special Term the trial justice found that the plaintiffs have established that the bank was a guilty participant in the trustee's embezzlement on and after November 14, 1930, in the amount of over $250,000 and must pay to the estate that sum with interest at six per cent, after certain minor adjustments have been made. The Appellate Division has reversed the findings of the trial justice and has found that the evidence does not establish guilty participation by the bank. Two of the justices dissented, holding that the evidence did establish guilty participation by the bank, but they did not agree with the trial justice or with each other upon the date when the guilty participation began.

There is no substantial conflict in the evidence. The questions which must be decided upon this appeal concern the inferences which should be drawn from the undisputed facts and the legal consequences that follow. At this point we state these facts only in broadest outline. On September 9, 1930, Kittredge as trustee drew a check for $5,000 to his own order upon his trust account and deposited the check to his credit in his personal account. From time to time thereafter he drew as trustee similar checks to his own order upon the trust account and deposited these checks in his personal account. During the time that he acted as trustee, Kittredge drew one hundred and forty-six checks upon the trust account and deposited them in his personal account, and it appears that more than three-quarters of the total deposits in Kittredge's personal account were made through transfers from his trust account. It appears, too, that more than half of the moneys which were at one time or another deposited in the trust account was thereafter withdrawn from that account through checks drawn

by the trustee to his own order. By that means the trustee appropriated the trust funds to his own use. Of the funds which he embezzled the bank received approximately $15,000, in payment of loans which the bank had previously made to the trustee personally and to the corporation of which he was treasurer and in payment of overdrafts upon the trustee's personal account.

In considering the effect of this evidence we must constantly bear in mind that the bank was under no duty to exercise vigilance to protect the trust estate from possible embezzlement by the trustee. When it accepted the trust account in which the trust funds were deposited, it assumed the obligation to pay out the moneys deposited in accordance with the directions of the trustee. It assumed no other obligation. To establish joint liability of the bank for the derelictions of the trustee, the plaintiffs must prove that the bank gave to the wrongdoer such assistance as would make the bank a participant in the wrong. Proof that the bank failed in care is insufficient. There can be no doubt that most, if not all, of the transfers of trust funds by the trustee from the trust account to his personal account were directed by the trustee with intent to appropriate the funds. That was a step in the thefts thereafter consummated. There can be no doubt that when the bank, pursuant to the directions of the trustee, debited the trust account and credited the trustee's personal account with the amount of the checks, which the trustee drew to his own order upon the trust account *and then deposited in his personal account,* and when the bank thereafter honored the personal checks of the trustee by means of which the theft was consummated, it, in fact, was assisting the trustee in stealing the trust moneys. Even so, unless in addition it appears that the bank knew that the trustee was engaged in embezzling trust funds by withdrawal of the trust money in the personal account *in order to apply them to his own use,* the bank was justified in following the directions of the trustee. The bank cannot be heard to say that it did not know that the trustee was depositing in his personal

account moneys which did not belong to him but belonged
to the trust estate, for the checks of the trustee which the
bank honored showed that undisputably. The trustee
wrongfully appropriates the trust funds when thereafter he
withdraws them and uses them as his own. (*Bischoff* v.
*Yorkville Bank*, 218 N. Y. 106.) In final analysis the
question upon this appeal is whether the bank may be heard
to say that it did not know that the trustee was appro-
priating the money belonging to the trust estate when the
trustee withdrew the trust moneys in the personal account.

.The applicable rule has been stated in *Bischoff* v. *Yorkville
Bank* (*supra*, p. 112): " A bank does not become privy to a
misappropriation by merely paying or honoring the checks
of a depositor drawn upon his individual account in which
there are, in the knowledge of the bank, credits created by
deposits of trust funds. The law does not require the bank,
under such facts, to assume the hazard of correctly reading
in each check the purpose of the drawer, or, being ignorant
of the purpose, to dishonor the check. The presumption
is, and after the deposits are made remains until annulled
by adequate notice or knowledge, that the depositor would
preserve or lawfully apply the trust funds. The contract,
arising by implication of law, from a general deposit of
moneys in a bank is, that the bank will, whenever required,
pay the moneys in such sums and to such persons as the
depositor shall direct and designate. Although the depositor
is drawing checks which the bank may surmise or suspect
are for his personal benefit, it is bound to presume, in the
absence of adequate notice to the contrary, that they are
properly and lawfully drawn. Adequate notice may come
from circumstances which reasonably support the sole
inference that a misappropriation is intended, as well as
directly."

A bank acts through its officers, agents and employees.
Each day myriads of checks are drawn upon deposit accounts
and myriads of other checks are deposited in the accounts
of a large commercial bank. Loans are made and loans

are paid. Each transaction may involve many operations and one employee may verify the signature of the depositor on checks, a second employee may be charged with the duty of seeing that the amount of the check is debited against the proper account, and a machine may give notice when a debit would result in an overdraft. Other employees may be employed in crediting the amount of the checks in the accounts in which the checks have been deposited, or in other operations in the course of payment of checks. Often no single employee has notice of any fact which appears to have a significance, differentiating the particular transaction from other innocent transactions or which might call for investigation by the bank; yet if every fact or circumstance of which some employee had notice could be combined in the consciousness of a single officer of the bank, that officer might have such clear notice that a transaction apparently innocent was fraudulent that the officer could not ignore the notice without becoming a party to the fraud.

Where a depositor asserts that a bank is liable for dereliction of a duty owing to the depositor, or where the bank seeks to retain a benefit it has innocently received from a wrongdoer at the expense of another innocent party, the bank may, perhaps, under some circumstances, be charged with constructive notice or knowledge of every fact of which any employee has received notice. We do not now consider such questions for they are not here presented, where there is no liability unless there has been *guilty* participation in the trustee's theft.

In September, 1930, the records of the bank showed at least a temporary technical overdraft in the trustee's personal account, which was promptly covered by the deposit of a check drawn on the trust account. If the bank had then caused an audit to be made of the personal account of the trustee and of the trust account, it would have discovered that the trustee had diverted trust moneys for the payment of an insignificant overdraft. An overdraft doubtless constitutes a debt to the bank but small overdrafts

promptly covered by the depositor are, it appears, often disregarded by banks. The bank treated this overdraft, and later insignificent overdrafts which were promptly covered by new deposits, as routine matters. We think it was justified in so treating these matters and we agree with the courts below that the bank did not thereby become a guilty participant in the trustee's diversion of trust funds. That, we think, follows from what the court said and decided in *Bischoff* v. *Yorkville Bank* (*supra*). We hold, too, that it was justified in deducting from the personal account interest on personal loans in accordance with its usual practice and was not called upon to investigate on each occasion whether or not the personal account contained at that time only trust funds.

None the less, where a bank accepts payment of any indebtedness with knowledge that the debtor is wrongfully using moneys which do not belong to him, the bank becomes a participant in the debtor's wrongful act, and what the court said and decided in *Bischoff* v. *Yorkville Bank* (*supra*) leads to the inevitable conclusion that elemental principles of honesty and good faith are violated where a bank, with knowledge that a borrower is transferring to his personal account moneys which belong not to him but to a trust estate, accepts payment of the personal indebtedness of the trustee from the moneys in the personal account, though inquiry by the bank would show that the only moneys in the personal account were moneys which did not belong to the debtor. If the bank chooses to ignore completely the facts which indicate that the debtor is using moneys which may not belong to him, and accepts payment careless whether or not the moneys paid belong to him, it becomes morally and legally a participant in the debtor's wrong.

In fairness to the bank it should be said that it does not contend otherwise. It claims that it acted honestly and and properly because its officers did not have actual knowledge that the debtor had transferred trust funds to his personal account, and it maintains that such knowledge should not be imputed to its officers merely because a clerk

may have had notice of that fact. Though of course the bank cannot fairly be charged with guilty participation in a crime upon the fiction of a constructive, composite knowledge of every fact of which any employee had notice, we think it plain that here it must be charged with notice that the trustee had placed in his personal account moneys belonging to the trust estate. We need not decide whether notice that the trustee had done so once would be sufficient. Here, there is more than that. Four such transfers had been made on or before November 13, 1930, and more than twenty, in addition, before September, 1931. Each such transfer was notice that the depositor, heavily indebted to the bank, was acting in a manner that is " unwise and hazardous." (*Bischoff* v. *Yorkville Bank, supra,* p. 110.) A requirement that a clerk, receiving such notice, should report it would not unduly hamper the transaction of the business of the bank. Concededly, where a corporate officer authorized to draw checks upon a corporate account draws a check to his own order, the clerk receiving such a check is required to report that fact. We cannot escape the conclusion that the bank is properly charged here with knowledge, at least, that the trustee was withdrawing from the trust account moneys belonging to the estate and was placing them in his own account. The bank becomes liable as a joint wrongdoer from the date when it *knowingly* assists the trustee in withdrawing the trust moneys from the personal account in order to pay a personal debt of the trustee to the bank.

The trial justice found that the bank had done so with guilty knowledge, in November, 1930, when Kittredge transferred trust funds to his personal account and then transferred the funds from his personal account to the account of Tompkins & Beaver, Inc., and used the funds so transferred to pay a corporate indebtedness. Under the circumstances here disclosed, we think that the bank may not be charged with knowledge that such funds were transferred in this roundabout way from the trust account to the corporate account. True, the bank has been enriched by

this payment which, in fact, was made out of corporate funds and must account to the trust estate for all moneys belonging to the estate which it has received, even though innocently; for we do not find that it has any superior equity which gives it the right to retain what was wrongly diverted from the estate. It did not, however, at that time become a guilty participant in the wrong and liable as a joint tort wrongdoer for that diversion and all later diversions thereafter by the trustee.

In September, 1931, with notice that the trustee had transferred substantial sums from the trust account to his personal account, the bank accepted the trustee's order to apply moneys in the personal account to the payment of a personal indebtedness. The most cursory examination of the accounts would have shown numerous overdrafts upon the personal account, covered by checks drawn upon the trust account, and a more careful examination would have disclosed that only moneys which had been withdrawn from the trust account then remained in the personal account. Neither a large bank nor a small bank may urge that it is ignorant of facts clearly disclosed in the transactions of its customers with the bank — disclosed, too, without the need of artificial synthesis of notice of separated operations; nor may a bank close its eyes to the clear implications of such facts. By ignoring these facts and their necessary implications, the bank became a guilty participant in the trustee's embezzlement of trust funds deposited in the trust account in the bank and from that date it became liable as a joint wrongdoer for all moneys which the trustee embezzled. So we held in *Bischoff* v. *Yorkville Bank* (*supra*) and again in *Gilliland* v. *Lincoln-Alliance Bank & Trust Co.* (264 N. Y. 517). That holding has been criticized at times because it is said that it places an undue burden upon the bank. Experience has failed to show that a bank is subjected to an undue burden by the ruling that it may not ignore clear indications that a debtor is paying a personal indebtedness out of funds which do not belong to him.

The judgment of the Appellate Division and that of the Special Term should be reversed, with costs in all courts

to the appellant, and the case remitted to the Special Term to compute the amount withdrawn by the trustee from the trust account and appropriated by him after September 22, 1931, and in addition the amount paid out of moneys belonging to the estate before that date to the bank upon personal obligations due from the trustee and from the corporation of which he was treasurer. Judgment should be directed in favor of the plaintiffs for these amounts, with interest at the rate of six per cent. (See 287 N. Y. 746.)

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.