Carl M. FIELD, as Trustee in Bankruptcy in the Estate of Giant Outlet Market, Inc., Bankrupt, Plaintiff-Appellant,

v.

BANKERS TRUST COMPANY and First National City Bank of New York, Defendants-Appellees,

Martin Lew, Morrie Lew, Abraham Schneider and Household Finance Corporation, Defendants.

No. 32, Docket 26554.

United States Court of Appeals Second Circuit.

Argued Sept. 27, 1961.

Decided Nov. 8, 1961.

Rehearing Denied Dec. 7, 1961.

Jacob Oliner, New York City, for plaintiff-appellant.

Arnold A. Jaffe, New York City (Morris A. Mondschein and Moses & Singer, New York City, on the brief), for defendant-appellee Bankers Trust Co.

J. Robert Lunney, New York City (Shearman & Sterling, New York City, on the brief), for defendant-appellee First Nat. City Bank of New York.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

The trustee in bankruptcy appeals from a dismissal by the district court of his suit to recover money from two banks on the theory that the banks were chargeable with knowledge that misappropriations by the bankrupt corporation's president impaired its capital in violation of New York Stock Corporation Law, McKinney's Consol. Laws, c. 59, § 58.

Giant Outlet Market, Inc. (Giant) operated a farmers market in Brooklyn, New York, until it burned down in December 1956. Thereafter it received approximately $40,000 on its fire insurance which its president and sole stockholder, Martin Lew, deposited in the corporate account maintained with Bankers Trust Company (Bankers). The corporation had previously filed with Bankers a corporate resolution authorizing Martin Lew to sign and endorse all negotiable instruments and authorizing Bankers to pay them.

Subsequently there occurred three incidents which form the basis for the claims of Giant's trustee in bankruptcy. First, during July 1957 Lew presented to Bankers four checks drawn by the corporation and signed by himself, totaling $7,439.06, and for a fee of $4.00 received four cashier's checks payable to four individuals, two of them named Lew, to whom the corporation owed nothing. The trustee sued Bankers to recover the $7,439.06 debited to Giant's account.

Second, Lew owed $6,000.00 to First National City Bank of New York (FN CB) for a personal loan. On July 18, 1957 Lew drew and signed a check for $1,045.00 on Giant's account at Bankers and gave it to FNCB as part payment for his personal loan. The back of the check bore Lew's notation that it was to be credited to his account at FNCB. The trustee sued FNCB for the $1,045.00 received by it and Bankers for the $1,045.00 debited to Giant's account, and Bankers cross-claimed against FNCB for any part of the $1,045.00 for which it might be held liable.

Third, on August 8, 1957 Lew drew and cashed a check at Bankers payable to himself for $16,433.30 which closed out Giant's account. He then appropriated the money for his own purposes. The trustee sued Bankers to recover the $16,433.30 debited to Giant's account.

An involuntary petition in bankruptcy was filed against Giant on January 23, 1958 and the corporation was adjudged a bankrupt on February 10, 1958. Creditors have filed claims aggregating $4,-443.12 and the time has elapsed for filing any further claims except for the United States which may still file a tax claim for $4,004.51. The trustee in bankruptcy who may sue to set aside transfers of property that are voidable under federal or state law, Bankruptcy Act, § 70, subs. a(4), e, 11 U.S.C.A. § 110, subs. a(4), e (1958), brought suit against Martin Lew, Bankers, and FNCB, but was unable to obtain service of process on Lew.

In the district court Judge Zavatt granted summary judgment for Bankers and FNCB. As to the trustee's first two theories of liability, fraudulent conveyance (Bankruptcy Act, § 67, sub. d, 11 U.S.C.A. § 107, sub. d; New York Debtor & Creditor Law, McKinney's Consol. Laws c. 12, §§ 270–281) and conversion, the judge found that after the first two incidents the corporation was still solvent and that the acts of Lew in making personal use of corporate assets were authorized by the corporation since he was president and sole stockholder. Therefore, he ruled that even if the bank had a duty to inquire it would have found nothing wrong: the acts were authorized and creditors were not harmed. Although

after the third incident the corporation was insolvent so that corporate authorization would not save the conveyance from being fraudulent, Judge Zavatt found that Bankers was a holder in due course of the check closing out Giant's account and thus having no knowledge of the transaction's impropriety, is not liable. These rulings the trustee does not challenge.

The trustee's third theory rests on Section 58 of the New York Stock Corporation Law which prohibits a corporation from paying any dividend or making any distribution of assets that would impair its capital.[1] Although all three distributions impaired Giant's capital, Judge Zavatt ruled that since the first two incidents did not cause insolvency creditors were not harmed. As to the third transaction he found that Bankers was a holder in due course. With these adverse rulings on his third theory the trustee takes issue.

By statutes such as Section 58 the stockholders are prohibited from withdrawing a certain portion of their initial corporate investment, usually called the stated capital. Without such a provision a corporation could distribute to its stockholders all its assets except those necessary to pay its debts. Since, in such an event, any loss would reduce the corporate assets below what would be necessary to pay all debts, the creditors would bear the full risk of continued operations while any gain would inure to the stockholders' benefit. The stated capital which Section 58 requires the corporation to retain serves as a buffer to absorb losses without impairing the assets necessary to satisfy all creditors. Therefore, the creditors are harmed by each reduction of this buffer, and, contrary to the conclusion of the district court, New York creates a cause of action for impairment of capital regardless of whether that particular distribution caused insolvency. Cottrell v. Albany Card & Paper Mfg. Co., 142 App.Div. 148, 151–52, 126 N.Y.S. 1070, 1073 (1911); Irving Trust Company v. Gunder, 234 App.Div. 252, 254 N.Y.S. 630 (1932). But see Quintal v. Adler, 146 Misc. 300, 262 N.Y.S. 126 (Sup.Ct.), aff'd without opinion, 239 App.Div. 775, 263 N.Y.S. 943 (1933), aff'd without opinion, 264 N.Y. 452, 191 N.E. 509 (1934).

Although Section 58 expressly imposes liability only on the board of directors of the corporation whose capital is impaired, the New York courts have also interpreted it to create liability on the part of transferees with knowledge. Ward v. City Trust Co. of N. Y., 192 N.Y. 61, 84 N.E. 585 (1908); see Reif v. Equitable Life Assur. Soc., 268 N.Y. 269, 197 N.E. 278, 100 A.L.R. 55 (1935); Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 109 F.2d 924 (2 Cir. 1940). The sole question as to FNCB is therefore one of knowledge, and this we will later discuss. Bankers, however, was not a transferee; it received no benefit from the transactions, but acted merely as an agent of Giant to pay money out to others. Even if Bankers had had knowledge, it is not clear that the New York courts would hold it liable. Compare Braem v. Merchants Nat. Bank, 127 N.Y. 508, 28 N.E. 597 (1891); Bartol v. Bennett, 56 N.Y.S.2d 314 (Sup.Ct.1945); Carson v. Federal Reserve Bank of N. Y., 254 N.Y. 218, 172 N.E. 475, 70 A.L.R. 435, (1930);

1. Section 58 of the New York Stock Corporation Law provides:
"No stock corporation shall declare or pay any dividend which shall impair its capital, nor while its capital is impaired, nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number or par value of its shares or of its capital, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities, including capital. In case any such dividend shall be paid, or any such distribution of assets made, the directors * * * shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution."

Duel v. Brewer, 92 F.2d 59, 112 A.L.R. 1246, (2 Cir. 1937), with Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A.1916F, 1059, (1916); Grace v. Corn Exchange Bank & Trust Co., 287 N.Y. 94, 38 N.E.2d 449, 145 A.L.R. 436, (1941). However, we find that Bankers had no such knowledge that the three transactions impaired capital.

■ As to the first transaction, the purchase of the cashier's checks, the only circumstances that could have alerted Bankers to Martin Lew's improprieties was the fact that the names of two of the four payees were Lew. However, since Giant's corporate resolution filed with Bankers authorized it to pay without inquiry checks drawn by Martin Lew payable to himself, the fact that he drew checks payable to others named Lew would not require inquiry by Bankers. As to the second transaction, the check payable to FNCB, Bankers was expressly authorized to ignore any notation on a check. Furthermore, even if Bankers knew that Martin Lew was paying a personal debt to FNCB, the resolution permitted it to pay checks drawn by Martin Lew in payment of his personal obligations. As to the third transaction, closing out the corporate account, Martin Lew was authorized to draw checks payable to himself. Nothing in the circumstances sufficiently put Bankers on inquiry to require it to ascertain the amount of Giant's liabilities and capital and the value of its assets, and thus to compute whether each transaction impaired capital. For only if Bankers was required to go that far should we charge it with knowledge.

Bankers had 24 hours within which to act on the checks. Its failure to dishonor them within that time would have constituted an acceptance. New York Negotiable Instruments Law, McKinney's Consol. Laws, c. 38, § 225. Cf. id. § 350–b; Regulation J. of the Board of Governors of the Federal Reserve System, 12 C.F.R. 210.5(d). On the other hand, if Bankers had dishonored the checks, it might have been held liable for any damages resulting to the corporate depositor. See Wil-

denberger v. Ridgewood Nat. Bank, 230 N.Y. 425, 130 N.E. 600 (1930); Wahrman v. Bronx County Trust Co., 246 App. Div. 220, 285 N.Y.S. 312 (1936). Therefore, giving banks so short a time to act on checks, New York does not, consistent with the practical necessities of banking, expect a bank, without any more notice than Bankers had in this case, to make an extended investigation before paying a check.

■ As to FNCB, the only knowledge which it received was that Martin Lew was paying a personal debt with corporate funds. Had FNCB inquired whether such use of corporate property was authorized, both Bankers and Giant would have answered in the affirmative. FNCB had no more obligation than Bankers to survey the assets, liabilities, and capital of Giant and thus to compute whether capital was being impaired.

Ward v. City Trust Co. of New York, 192 N.Y. 61, 84 N.E. 585 (1908), is not to the contrary. There the New York Court of Appeals, in holding liable a bank which received $125,000 in corporate funds for an officer's personal debt, stressed two factors which are absent here. First, the check was for a very large amount, $125,000. Second, the bank had agents on the corporation's board of directors and so had ready means of information about its financial situation. While holding in Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A. 1916F, 1059, (1916), and Grace v. Corn Exchange Bank & Trust Co. 287 N.Y. 94, 38 N.E.2d 449, 145 A.L.R. 436 (1941), that the course of numerous dealings over an extended period of time gave knowledge to banks which had received benefits from the appropriated money, the New York Court of Appeals recognized that "to establish joint liability of the bank for the derelictions of the trustee, the plaintiffs must prove that the bank gave to the wrongdoer such assistance as would make the bank a participant in the wrong. Proof that the bank failed in care is insufficient." Grace v. Corn Exchange Bank & Trust Co., 287 N.Y. at 102, 38 N.E.2d at 452 (1941). The facts

of this case are much closer to those of Reif v. Equitable Life Assur. Soc., 268 N.Y. 269, 197 N.E. 278, 100 A.L.R. 55 (1935), where the defendant was held to have no notice. See also Newfield v. Oosterhuis, 137 F.2d 437, 440 (2 Cir. 1943); Willcox v. Goess, 92 F.2d 8, 14–16 (2 Cir. 1937); Klachko v. Lawyers Trust Co., 170 Misc. 134, 9 N.Y.S.2d 309, aff'd without opinion, 256 App.Div. 1060, 12 N.Y.S.2d 239 (1939).

Affirmed.